S99A0854. MONSALVE v. THE STATE.
(519 SE2d 915)

SEARS, Justice.

Appellant Miguel Angel Monsalve appeals his convictions for felony murder, felony theft by taking, and conspiracy to commit armed robbery.[1] Finding the evidence sufficient to support his convictions, and finding no error in the trial court's rulings, we affirm.

Construed most favorably to the verdict, the evidence introduced at trial showed that on November 3, 1995, appellant and his co-defendants Nhek, Kundert, Velasco, and Medina discussed robbing someone. The group drove in Kundert's car to Velasco's home to retrieve a gun, and then drove to an apartment complex where appellant stole a red Mitsubishi. Appellant and Nhek rode in the stolen Mitsubishi, with appellant driving, while the others rode in Velasco's

---

[1] The crimes occurred on November 3, 1995, and appellant was indicted on May 14, 1996. The three-day trial commenced on April 27, 1998 in Gwinnett County Superior Court, and appellant was sentenced to life imprisonment for felony murder, and a consecutive ten-year sentence for felony theft by taking. Appellant's new trial motion was filed on May 22, 1998, amended on November 30, 1998, and denied on December 4, 1998. The notice of appeal was filed on December 30, 1998, the appeal was docketed in this Court on March 16, 1999, and submitted for decision without oral argument on May 10, 1999.

car. After the two cars became separated, appellant and Nhek spotted a young woman driving a car, and appellant stated, "Let's get that one." When the young woman parked her car in front of her boyfriend's apartment, appellant pulled the Mitsubishi along side her. Nhek jumped out of the car, confronted the woman, and demanded money. She got back into her car and began screaming and honking her horn. Nhek shot her in the head, killing her. Appellant drove Nhek from the scene and, along with his co-defendants, later dumped the stolen Mitsubishi into a lake.

At appellant's trial, Velasco and Kundert testified on behalf of the State. Appellant's videotaped custodial statement was played for the jury, in which he admitted planning to rob somebody, stealing the Mitsubishi, and being present when Nhek shot the victim.

1. Viewed most favorably to the verdict, the evidence was sufficient to enable any rational trier of fact to find appellant guilty beyond a reasonable doubt of the crimes for which he was convicted.[2] Anyone who aids and abets in the commission of a crime is a party thereto and may be charged with and convicted of that crime.[3] Appellant's videotaped statement to police, which was corroborated by his co-defendants, authorized the jury to conclude that he initiated the idea to commit an armed robbery and conspired with the others to commit the crime, stole the Mitsubishi and disposed of it after the crime, identified the woman who would become the murder victim, parked the Mitsubishi along side the victim's car, waited while Nhek attempted to rob the victim and shot her, and drove the car away from the crime scene after the murder was committed.

2. Appellant contends that the trial court erred in admitting into evidence his videotaped in-custody statement, because the statement was not voluntary and was obtained without a knowing and intelligent waiver of rights. At a pre-trial hearing concerning the tape's admissibility, appellant testified that even though he offered no resistance when arrested, he was handled roughly, pushed, punched and pulled by Detective King of the Gwinnett County Police. He also testified that King spoke abusively to him while he was being transported to police headquarters. Appellant also stated that when he was walking to the interrogation room, King told him he had better answer the questions asked of him by another detective, or else he would have to face King later. Appellant claims King's intimidation, threats, and coercion rendered his in-custody statement involuntary.

We note that it was explained at the pre-trial hearing that the police videotape equipment had malfunctioned at the beginning of

---

[2] *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

[3] OCGA §§ 16-2-20 and 16-2-21.

appellant's in-custody interview, and hence the State did not offer recorded evidence of any waiver of rights made by appellant in connection with his custodial interview. However, the trial court heard testimony from Gwinnett County Detective Burnette, who (along with Detective King) had arrested appellant, and who had conducted the in-custody interrogation. Detective Burnette testified that at the time of arrest, he read appellant his *Miranda* rights from a preprinted card, and appellant stated that he understood those rights. Burnette also testified that once they got to police headquarters, he *Mirandized* appellant again, and appellant then agreed to speak with Burnette about the crimes. Furthermore, appellant testified at the pre-trial hearing that before he was interviewed at the police station, he was advised of his rights (including his rights to remain silent and to have a lawyer present at his interrogation), that he understood those rights, and that he willingly gave his statement to police. Hence, the trial court was authorized to conclude that appellant's videotaped statement was made voluntarily after a knowing and intelligent waiver of rights.

Regarding appellant's claim of abusive treatment and coercion, we note that appellant testified that Detective Burnette did not threaten or coerce him during his in-custody interview, and the only evidence of Detective King's allegedly abusive behavior is appellant's own testimony. When the only evidence of intimidating or coercive behavior that might taint a custodial statement comes from the defendant, the decision whether to admit the statement turns upon the trial court's determination of witness credibility.[4] In this case, we cannot say that the trial court clearly erred in making that credibility determination in favor of admitting appellant's videotaped statement.[5]

3. The trial court did not err in refusing to give appellant's requested charge on immunity and leniency regarding the testimony of co-defendant Velasco. At the time of his testimony, Velasco was serving a prison sentence resulting from his plea of guilty to charges of conspiracy to commit armed robbery and theft. In addition to those crimes, Velasco had originally been charged with murder and illegal firearm possession, but he had not been tried on those charges. Based upon this information, appellant asked the trial court to charge the jury that it could consider whether the testimony of one who has been given immunity from prosecution might be slanted in such a way to further the witness's own interest.

However, as appellant concedes, Velasco himself testified that he

---

[4] *Raulerson v. State*, 268 Ga. 623, 627 (491 SE2d 791) (1997).
[5] See id.

had been promised nothing in exchange for his testimony against appellant, and had not been granted any immunity or leniency, or threatened with any harm, in relation to his testimony. Our own review of the record reveals no evidence that Velasco testified in exchange for immunity or leniency, and we conclude that appellant's contrary allegations are based upon speculation. Because it is not error to refuse a requested charge when there is no evidence to support it,[6] the trial court did not err in refusing appellant's requested charge on leniency or immunity.

4. The trial court did not err in admitting into evidence over objection an intact .38 caliber bullet during the testimony of the State's forensic investigator. A weapon that is similar to a weapon used in a crime, but was not actually used in the crime's commission, is generally admissible into evidence so long as a proper foundation is laid showing that in essential respects it offers a trustworthy standard of comparison.[7] In this case, the State's forensic expert testified that the .38 caliber bullet introduced into evidence matched the bullet core (or projectile) that had been removed from the victim's skull during the autopsy. Accordingly, the trial court did not abuse its discretion in admitting the .38 caliber bullet into evidence, because it was relevant to prove the type of bullet that caused the victim's death.

5. The trial court did not err in admitting into evidence a postmortem photograph of the gunshot wound to the victim's head that did not portray any changes made to the body that might have inflamed the jury.[8]

*Judgment affirmed. All the Justices concur.*

DECIDED SEPTEMBER 13, 1999 —
RECONSIDERATION DENIED OCTOBER 15, 1999.

*Stepp & Randazzo, Glynn R. Stepp,* for appellant.
*Daniel J. Porter, District Attorney, Dawn H. Taylor, Assistant District Attorney, Thurbert E. Baker, Attorney General, Paula K. Smith, Senior Assistant Attorney General, Adam M. Hames, Assistant Attorney General,* for appellee.

---

[6] *Bowden v. State,* 270 Ga. 19, 21 (504 SE2d 699) (1998).
[7] *Boyd v. State,* 264 Ga. 490, 491 (448 SE2d 210) (1994).
[8] *Brown v. State,* 250 Ga. 862, 867 (302 SE2d 347) (1983).