## A03A0771. MANNING v. THE STATE.
### (578 SE2d 494)

ELDRIDGE, Judge.

Joseph Manning was indicted as a recidivist by a Muscogee County Grand Jury for rape, two counts of aggravated sodomy, aggravated sexual battery, aggravated assault, and kidnapping with bodily injury against W. L.; aggravated assault and loitering and prowling against A. V.; and criminal attempt to commit kidnapping and simple battery against V. N. Prior to trial, the trial court severed from the original indictment the aggravated assault and the loitering and prowling offenses against A. V.[1] Manning was tried by a jury on the remaining counts of the indictment and was found guilty on all counts except the criminal attempt to commit kidnapping against V. N., for which the jury returned a not guilty verdict. Manning appeals from the denial of his motion for new trial. Finding no error, we affirm.

Viewed in the light most favorable to the verdict,[2] the evidence shows that on September 7, 2000, between the hours of 11:00 a.m. and noon, V. N., a female investigator in the local district attorney's office, stopped to help a female motorist who was having car trouble. V. N. stayed with the female motorist while she waited for a tow truck. When V. N. attempted to restart her car, the battery was dead. V. N. called a male co-worker to assist; however, before he could get there, Manning arrived on the scene and offered his help. As Manning exited his car, he put on a white hat and plastic safety glasses. V. N. testified that it was obvious Manning did not know what he was doing in that he kept hitting a screwdriver on the air compressor and the alternator to no avail. V. N. testified that she finally connected the jumper cables to the car battery. Just as V. N.'s co-worker arrived, Manning was able to start V. N.'s car. V. N. testified that Manning seemed angry that her co-worker was there. As the co-worker proceeded to take the battery cables off V. N.'s car, Manning repeatedly suggested that the co-worker leave. Manning then asked V. N. for a hug. When V. N. refused, Manning put his arm around her shoulder in such a manner that his forward momentum would have pushed her back toward his car. V. N. was able to "wiggle" away. At that point, Manning jumped into his car and drove off at a fast rate of speed on the wrong side of the road, making a left turn at the first corner. V. N. testified that her encounter with Manning made her extremely nervous; that Manning seemed determined to help her, whether she wanted his help or not; and that Manning seemed deter-

---

[1] After the trial of the remaining offenses, these counts were placed on the dead docket.
[2] *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

mined to make her feel grateful that he had gone out of his way to stop and help.

W. L. testified that she left work at 11:30 p.m. on September 7, 2000. After going home, she decided to go out for soft drinks and to put air in her car's tires. As she entered the store, Manning was standing outside and, after speaking to her, offered to help her put air in her tires. After Manning put air in the tires, W. L. bent down to put the cap back on. At this point, Manning pointed to his mouth, as if to ask for a kiss. W. L. refused, and Manning made the same gesture again, this time without a smile. As W. L. backed away from him, Manning grabbed her by the neck and choked her until she passed out. When W. L. regained consciousness, she was lying on the ground. W. L. began to scream and fight, and Manning started choking her again. Manning told W. L. if she wanted to live, she needed to walk around to the back of the store and perform oral sodomy on him. Manning pulled her by her hair and forced her to walk to the back of the store. Once there, Manning took some condoms out of his pocket and forced her to place a yellow colored condom on his penis and orally sodomized and raped her.

Manning then demanded that W. L. come home with him. As they started to the front of the store, Manning stopped, made W. L. get on her hands and knees, and anally sodomized her. Manning finally took her to the front of the store, telling her that, if anyone questioned her, to say she was his girlfriend and that the sexual acts were consensual. However, on reaching the front of the store, W. L. started screaming. Manning proceeded to kick and hit W. L., which was noted by police officers who were patrolling the area. When the police officers activated their blue lights, Manning ran. He was ultimately apprehended behind a neighboring business, still wearing the yellow condom. *Held*:

1. Manning requested and was granted a state-funded mental evaluation, which was performed on November 7, 2000. Thereafter, Manning filed a special plea of insanity and requested additional state funds for independent psychiatric testing, claiming that the first court-ordered evaluation was inadequate and requesting funds to hire an expert in psychiatry or psychology to assist him in his defense. After an ex parte hearing on January 2, 2001, the trial court denied Manning's request, which Manning alleges was an abuse of discretion.

Manning failed to make the threshold showing at his ex parte hearing for funds that his mental state would be a significant factor at trial. See *Ake v. Oklahoma*, 470 U. S. 68 (105 SC 1087, 84 LE2d 53) (1985); *Bright v. State*, 265 Ga. 265, 266-278 (455 SE2d 37) (1995). "The mere filing of a motion does not constitute a preliminary showing that sanity at the time of the offense is likely to be a significant

factor at trial." (Citation and punctuation omitted.) *Perkins v. State,* 215 Ga. App. 296, 297 (450 SE2d 324) (1994).

In this case, the court-ordered psychological examination report found that Manning was competent to assist in his defense; that he knew the difference between right and wrong; that he was able to understand the legal proceedings he faced; that his cognitive functioning was unremarkable; that he had no difficulties with attention, concentration, or memory; that his intellectual capacities were average to above-average; and that he was aware of the charges against him. The psychologist went on to find that there was nothing in Manning's statements to police or in the record which demonstrated that, at the time of his arrest, Manning was impaired in his perceptions of reality, his logical thinking ability, or his awareness of his actions or circumstances, or that he was delusional or psychotic.

The psychologist did note that Manning had previously been diagnosed with bi-polar disorder and recommended continued treatment, but found no evidence that this disorder would have aggravated his ability to distinguish right from wrong, citing as evidence Manning's attempt to avoid police apprehension by attempting to provide the arresting officers with an alternative explanation for his behavior, i.e., that the victim was his wife whom he had caught being unfaithful to him. The psychologist went on to state that while Manning "may have some emotional and impulse control problems, exacerbated by stress, there is no indication that the nature of his difficulties creates an inability to make distinctions between right and wrong or a delusional compulsion."

At the ex parte hearing, Manning's main arguments were that the report was biased or slanted toward the State and that the psychologist did not look into his background and interview relatives.[3] However, Manning did not present any evidence which called into question his mental condition. Therefore, he failed to make the preliminary showing that his sanity was likely to be a significant factor at trial. See *Rattansay v. State,* 240 Ga. App. 165, 167-168 (2) (523 SE2d 36) (1999). Further, Manning made no showing whatsoever that the psychologist's evaluation was inadequate save for it not producing the desired determination. See *Jones v. State,* 189 Ga. App. 232, 237 (2) (375 SE2d 648) (1988) (presumed bias in favor of the State insufficient to show psychological examination inadequate).

---

[3] The record does not support this argument. To the contrary, the report indicated that, in addition to Manning's previous treatment records from West Central Georgia Regional Hospital, the psychologist had reviewed numerous investigative police reports, the videotaped statement made by Manning after his arrest, and the transcript of Manning's hearing in recorder's court. Further, Manning has failed to specify what particular light his family would shed on his state of mind at the time he committed the crimes.

Therefore, there was no abuse of discretion in the trial court denying Manning funds for independent psychiatric testing.

2. Manning contends that the evidence was insufficient as to the essential element of penetration to support the conviction for rape against W. L.

"OCGA § 16-6-1 (a) defines rape as 'carnal knowledge of (a) female forcibly and against her will,' and further defines carnal knowledge as 'any penetration of the female sex organ by the male sex organ.'" *Knight v. State,* 251 Ga. App. 145, 146 (553 SE2d 670) (2001). "Although penetration is an essential element of the crime of rape, it may be slight. Moreover, such penetration may be proved by indirect or circumstantial evidence." (Punctuation and footnotes omitted.) *Wallace v. State,* 253 Ga. App. 220, 222 (1) (b) (558 SE2d 773) (2002).

W. L. testified at trial that Manning made her lie down and removed her underwear. Initially, Manning demanded that W. L. perform oral sodomy on him. However, in response to her pleas, he stated he would rape her instead. W. L. further testified that Manning took out some condoms and started to rape her, but had difficulties and performed oral sodomy on her. At this point, the prosecutor asked W. L., "You say that he was having difficulty with the rape, but he did actually make vaginal penetration?" W. L. replied, "Well, after — well, that's what I'm getting to. He — he performed oral sex and then he went back to successfully raping me." Later in her testimony W. L. explained, "[W]hen he first told me he was going to wear a condom and that he was a nice rapist, I figured, you know, 'All right. It's bad enough I'm getting raped. At least through some kind of bizarre hand,' I don't know, that he was at least going to protect myself from him." When Manning was arrested, he still wore the condom.

Further, in addition to W. L.'s testimony concerning the rape, the State presented Manning's taped statement given to police. Manning stated to officers that the incident with W. L. "was a rape." He went on to explain that he choked W. L. to get her attention and let her know that he "was going to get some pussy." He further stated that he had "intercourse" with W. L. behind the store and described W. L. putting the condom on his penis. Accordingly, the evidence here "clearly raises reasonable inferences of fact for finding beyond a reasonable doubt that a rape occurred." *Richie v. State,* 183 Ga. App. 248, 250 (1) (358 SE2d 648) (1987). See *Fields v. State,* 216 Ga. App. 184, 187 (2) (453 SE2d 794) (1995) (testimony that he "'forced me to have sex with him'" is evidence of penetration).

3. Manning's contention that he was denied his right to testify by the trial court's refusal to reopen the evidence is without merit. The defense rested without calling Manning as a witness. At the close of the State's rebuttal evidence, Manning elected not to put up any sur-

rebuttal evidence. Even though the evidence was closed, the trial court offered at such time to reopen the evidence for Manning to testify. Both Manning and his counsel stated on the record that the defendant did not want to testify. Evidence was then closed, all witnesses were released, and court was recessed for the day. The next morning, just prior to closing arguments, Manning stated his desire to testify, which was denied by the trial court.

> Whether to reopen the evidence is a matter which rests within the sound discretion of the trial court. A trial court's ruling in this regard will not be reversed in the absence of an abuse of discretion. Whether there has been a reversible abuse of discretion requires a consideration of the totality of the circumstances.

(Citation and punctuation omitted.) *Peeples v. State*, 234 Ga. App. 454, 458 (5) (507 SE2d 197) (1998).

Under the facts of this case, we find no abuse of discretion in the trial court denying Manning's request to reopen the evidence. Further, no proffer was made as to Manning's testimony at the trial level; therefore, "we are unable to ascertain how he was harmed by the court's ruling. [Cit.]" *Tweedell v. State*, 218 Ga. App. 518, 520 (2) (462 SE2d 181) (1995).

*Judgment affirmed. Johnson, P. J., and Mikell, J., concur.*

DECIDED FEBRUARY 20, 2003.

*John R. Mobley II*, for appellant.
*J. Gray Conger, District Attorney, Michele C. Ivey, Assistant District Attorney*, for appellee.