A05A1474. SHORT v. THE STATE.
(623 SE2d 195)

RUFFIN, Chief Judge.

A Douglas County jury found Keith Short guilty of kidnapping with bodily injury, armed robbery, hijacking a motor vehicle, aggravated sodomy, and rape. In 15 enumerations of error, Short challenges the sufficiency of the evidence, the admission of certain evidence, and the trial court's rulings with respect to various jury charges. We affirm.

1. " 'On appeal from a criminal conviction, the evidence must be construed in the light most favorable to the verdict, and the [defendant] no longer enjoys a presumption of innocence.' "[1] We do not weigh the evidence or resolve issues of witness credibility, but merely determine whether the evidence was sufficient to find the defendant guilty beyond a reasonable doubt.[2]

Viewed in this manner, the evidence shows that the victim was in the parking lot of her boyfriend's Douglasville apartment complex around midnight on June 2, 1995. The two planned to drive to Florida that night, and she began moving her luggage from her car to his truck. At that point, two men came around the front of the truck and another approached the victim from behind, placing a gun in her back. The gunman told her to empty her pockets, while the other two searched her car. The gunman then obtained the victim's car keys, gave them to the other men, pushed her into the back seat of her car, and got in with her. The other two men jumped in the front seat, and one drove the car from the apartment complex.

---

[1] *Gearin v. State*, 255 Ga. App. 329, 330 (565 SE2d 540) (2002).
[2] See *Pruitt v. State*, 279 Ga. 140, 141 (1) (611 SE2d 47) (2005); *Gearin*, supra.

The gunman ordered the victim to place her head between her legs, so she did not see which way the car traveled as it left the complex. At some point during the drive, the gunman began fondling the victim's breasts. He then unzipped his pants and ordered her to perform fellatio. Still held at gunpoint, the victim complied. When the front-seat passenger saw what the gunman was doing, "he started laughing and turned back around."

The gunman next told the victim to pull down her pants, and she did so. He pulled her onto his lap and touched her vagina with his penis. According to the victim, he tried to "enter into [her]," but "could not get all the way in," so he shoved her "on all fours" and "tried to enter [her] from behind." When the victim attempted to escape through the passenger door, the gunman grabbed her and threatened to kill her.

The front-seat passenger stated that "they needed to do something with [the victim]," and the three men exited the car to talk. The gunman then forced the victim into the trunk, and the car began moving. The victim managed to pop the trunk open, jumped out while the car was still moving, ran to a house, and called the police. Although Fulton County officers responded to the home, which apparently was located in Fulton County, the Douglas County Sheriff's Department ultimately investigated the crimes.

Police discovered that, after the incident, a call was placed from the victim's car phone to an apartment complex near Six Flags. The apartment manager reported that she had seen the victim's car the day after the attack, and authorities surrounded the complex. Several officers observed the car driving in the area and approached it in a store parking lot. Keith Short jumped from the front passenger seat and ran. Officers quickly apprehended him and also arrested Short's brother, Robert, who was driving the victim's car.[3] After further investigation, the police identified William Cunningham as the third individual involved in the attack.

Following his arrest, Short gave a statement to police. He admitted that he, his brother, and Cunningham approached the victim in the Douglasville apartment complex. Short and Robert entered her car, while Cunningham held her outside the car at gunpoint. Cunningham and the victim then got into the car, and Robert drove from the complex. Short further stated that, at one point, he looked in the back seat and saw Cunningham "messing" with the victim, who was naked. According to Short, he told Cunningham "don't do that."

---

[3] The police also arrested Donnie Smith, another passenger in the car, but concluded that he did not participate in the attack.

(a) With respect to his rape and aggravated sodomy convictions, Short claims that the State presented insufficient evidence that the crimes occurred in Douglas County. He asserts that the victim did not know where the car was located when these sexual offenses occurred. And although her ordeal began in Douglas County, it ended in Fulton County.

"Venue, like all elements of the State's case, must be proven beyond a reasonable doubt."[4] Criminal actions generally must be tried in the county where the crime was committed.[5] But when a crime is committed in transit or in more than one county, Georgia law provides special methods for establishing venue. For example, a crime committed on or immediately adjacent to a boundary line between two counties is considered committed in either county.[6] Moreover, "in any case it cannot be determined in what county a crime was committed, it shall be considered to have been committed in any county in which the evidence shows beyond a reasonable doubt that it might have been committed."[7] And under OCGA § 17-2-2 (e):

> [i]f a crime is committed upon any railroad car, vehicle, watercraft, or aircraft traveling within this state and it cannot readily be determined in which county the crime was committed, the crime shall be considered as having been committed in any county in which the crime could have been committed through which the railroad car, vehicle, watercraft, or aircraft has traveled.

The evidence shows that the sexual offenses occurred in a moving vehicle that traveled at some point from Douglas County to Fulton County. As Short notes on appeal, Robert told police that, when the car was in Fulton County, he turned around, saw that the victim was naked, and heard Short ask "what are you doing?" Robert further stated that they were "in Atlanta" when he saw Cunningham "behind" the naked victim. Robert also asserted, however, that he did not see Cunningham touch the victim sexually and that the touchings could have occurred earlier. Short told police that the car remained in Douglas County for only "two seconds" after they left the apartment complex. But he stated that he did not "know [his] way around" the area. A sergeant with the Douglas County Sheriff's Department testified that it would be "[i]mpossible" to reach the county line that quickly.

---

[4] *Tompkins v. State*, 278 Ga. 857, 858 (1) (607 SE2d 891) (2005).

[5] OCGA § 17-2-2 (a).

[6] OCGA § 17-2-2 (b).

[7] OCGA § 17-2-2 (h).

Given the evidence presented, the jury was authorized to conclude beyond a reasonable doubt that the sexual assaults might have been committed either in Douglas County or Fulton County, rendering venue proper in Douglas County.[8] Furthermore, under OCGA § 17-2-2 (e), "venue for a crime involving a vehicle may lie in any county through which the vehicle traveled."[9] Relying on this provision, the jury could have determined that venue for the sexual offenses, which occurred in a moving car traveling through Douglas County and Fulton County, lay in Douglas County.[10]

Short argues on appeal that, because the State relied on "exceptions" to the general venue rule, it failed to prove that the crimes occurred in Douglas County, as alleged in the indictment. We disagree. Subsections (b), (e), and (h) of OCGA § 17-2-2 offer methods of establishing venue when the actual location of the crime cannot be determined with certainty.[11] If the State proves venue in a particular county under those subsections, the crime is considered to have been committed in that county, even if it was committed elsewhere.[12] And pursuant to the subsections, the State submitted evidence authorizing the jury to find that the sexual offenses occurred in Douglas County.

Citing *Moss v. State*,[13] Short also contends that his convictions must be reversed because the indictment failed to state that venue would be proven through OCGA § 17-2-2 (b), (e), or (h). Under *Moss*, the State cannot rely on an exception to the criminal *statute of limitation* — and thus avoid the bar created by the limitation period — unless it alleges such reliance in the indictment and proves that the exception applies.[14] The *Moss* decision, however, has no application here, as this case does not involve an exception to the statute of limitation. Moreover, the State did not try to avoid the venue requirement. It used statutorily authorized methods for proving venue in Douglas County. Short has pointed to no authority requiring the State to allege this reliance in the indictment, and we see no reason to impose such requirement.[15]

---

[8] See id.; *Hendrix v. State*, 242 Ga. App. 678, 679-680 (1) (530 SE2d 804) (2000); *Dillard v. State*, 223 Ga. App. 405, 406 (2) (477 SE2d 674) (1996).

[9] *Waldrip v. State*, 267 Ga. 739, 749 (13) (482 SE2d 299) (1997).

[10] See id.; *Gearin*, supra at 334 (3).

[11] See *Pruitt*, supra at 143 (4).

[12] See *Gearin*, supra.

[13] 220 Ga. App. 150 (469 SE2d 325) (1996).

[14] See id.

[15] See *Trumpler v. State*, 261 Ga. App. 499, 501 (3) (583 SE2d 184) (2003) (rejecting claim that indictment was insufficient because it alleged that defendant directly committed crime, while State proceeded against him on theory of party to the crime; a party to the crime may be charged with committing the crime, and "[a]lthough the State was required to prove that [the

(b) Short also argues that the State did not prove that he participated in the rape and aggravated sodomy, which were committed by Cunningham. He concedes that the evidence, construed favorably to the verdict, demonstrates that he took part in a conspiracy to rob the victim at gunpoint, kidnap her, and hijack her vehicle. He contends, however, that the sexual offenses were not committed in furtherance of the conspiracy and that he did not intentionally aid in their commission.

Under Georgia law, "[a]ll of the participants in a conspiracy are criminally responsible for the acts of each, committed in the execution of the conspiracy, and which may be said to be a probable consequence of the conspiracy, even though the particular act may not actually have been a part of the plan."[16] As noted above, the evidence demonstrated that Short participated in a conspiracy to rob the victim, then kidnap her at gunpoint, place her in the back seat of the car, and drive around Atlanta. Cunningham attempted to rape the victim and ordered her to perform sodomy during the drive. And the evidence — construed favorably to the verdict — shows that Short, who was the front seat passenger, did nothing to stop the assault, instead laughing when he saw Cunningham's conduct.

Although Short now argues that, *as a matter of law*, the attempted rape and sodomy were neither a part nor a foreseeable consequence of the original plan, we disagree. In our view, a jury could reasonably conclude that sexual assault was a probable consequence of the conspiracy to kidnap the female victim at gunpoint and drive around with her in a vehicle. That Short raised no objection to Cunningham's actions and continued to take part in the kidnapping conspiracy after the sexual assault occurred supports such conclusion.[17] Accordingly, the evidence sufficiently linked Short to the sexual offenses.[18]

(c) Finally, Short argues that his rape conviction must be reversed because the State presented no evidence of penetration. " 'Although penetration is an essential element of the crime of rape,

---

defendant] was a party to the crime[ ] . . . , it was not required to allege [this theory] in the indictment").

[16] *Huffman v. State*, 257 Ga. 390, 391 (2) (359 SE2d 910) (1987).

[17] See id. at 392 (fact that defendant consummated drug transaction after discovering that co-conspirator had murdered individual involved in the transaction supported conclusion that "the victim's murder was a probable and foreseeable consequence of the underlying conspiracy to traffic in illegal drugs").

[18] See id. at 392 (3) (jury authorized to find that attempted armed robbery, aggravated assault, and attempted kidnapping were probable consequences of drug trafficking conspiracy); *Shehee v. State*, 167 Ga. App. 542, 543 (1) (307 SE2d 54) (1983) (armed robbery committed *before* kidnapping "was naturally or necessarily done pursuant to or in furtherance of the conspiracy to kidnap [the victim]" at gunpoint).

it may be slight.' "[19] The victim testified that Cunningham "could not get [his penis] *all the way* in," was unable to "penetrate [her] *entirely*," and "did not *fully penetrate* [her] inside."[20] On cross-examination, the victim also testified that, to the extent defense counsel concluded from her interview with police that no penetration occurred, counsel "misunderstood" her answers. Given this testimony, the jury could conclude that at least some penetration occurred, authorizing the rape conviction.[21]

2. Short argues that the trial court erred in admitting his statement to police because it was not freely and voluntarily given. The evidence shows that Short was 16 years old at the time of the offenses. In determining whether a juvenile's custodial statement is free and voluntary, the trial court applies a "totality of the circumstances" test and considers the following factors:

> the age and education of the accused; his knowledge of the charges against him and of his right to consult with an attorney; whether he was allowed to consult with relatives; whether he was interrogated before or after being formally charged; the method and length of the interrogation; whether the juvenile refused to give a voluntary statement on prior occasions; and whether the juvenile later repudiated the custodial statement.[22]

Before admitting Short's statement, the trial court held a *Jackson-Denno* hearing. Sergeant Jerry Wynn of the Douglas County Sheriff's Department testified, among other things, that he read Short his *Miranda* rights when Short was arrested, and Short signed a *Miranda* waiver form before his interview with police the next day. Wynn also informed Short that he had the right to have a parent present during the interview, and Short responded that his mother "wouldn't come" because she was unhappy with his behavior. Wynn nonetheless called Short's mother, who declined to come to the police station, saying that she was "through with [Short]." Short's mother hung up the telephone after telling Short that she was ashamed of him and did not want to see him again. Short then elected to proceed with the interview without his mother present.

---

[19] *Manning v. State*, 259 Ga. App. 794, 797 (2) (578 SE2d 494) (2003).

[20] (Emphases supplied.)

[21] See id.; *Jackson v. State*, 157 Ga. App. 604 (1) (278 SE2d 5) (1981); see also *Raymond v. State*, 232 Ga. App. 228, 228-229 (1) (501 SE2d 568) (1998).

[22] (Punctuation omitted.) *Brown v. State*, 253 Ga. App. 1, 2 (1) (557 SE2d 464) (2001). See also *Henry v. State*, 264 Ga. 861, 862 (2) (452 SE2d 505) (1995).

Wynn further testified that Short had completed tenth grade at the time of the interview and communicated like an average 16 year old. He did not appear to be mentally deficient, suffering from any disability, or unable to understand the words Wynn used. Wynn explained the charges to Short, but stated that he was not sure whether Short would be charged with the sexual offenses. Short never asked for a lawyer or stated that he did not want to talk to police. According to Wynn, he did not force, threaten, or coerce Short into giving a statement.

Following Wynn's testimony, the trial court found that Short had been advised of his *Miranda* rights twice, was not lacking in "mental faculties," understood the potential charges that might be brought against him, and knew that he had a right to have his mother present during the interview, but elected to proceed without her. The trial court concluded that, given the totality of the circumstances, Short's statement was free and voluntary.

"On appeal, the standard of review is whether the trial court was clearly erroneous in its factual findings on the admissibility of [Short's] statement."[23] The trial court applied the appropriate test, and the evidence supported its factual findings. We thus find no error in the admission of the statement.[24]

3. The trial court admitted into evidence a post-arrest statement given by Robert, who was tried with Short. After the jury heard the statement, Short asked the trial court to instruct the jury that the statement should only be considered against Robert. The trial judge declined to give a limiting instruction in the middle of trial, but included such instruction in the general jury charge.

Pursuant to *Bruton v. United States*[25] and its progeny, "[a] co-defendant's statement meets the Confrontation Clause's standard for admissibility when it does not refer to the existence of the defendant and is accompanied by instructions limiting its use to the case against the confessing co-defendant."[26] Citing this principle, Short claims that the trial court should have given a contemporaneous charge regarding use of Robert's statement. Before trial, however, Short explicitly waived any *Bruton* arguments that he might have had. Thus, Short waived any claim that *Bruton* and the Confrontation Clause required a contemporaneous instruction.

---

[23] *Henry*, supra at 862 (2).

[24] See *McKoon v. State*, 266 Ga. 149, 151 (2) (465 SE2d 272) (1996) ("The absence of a parent is just one of nine factors that this Court considers."); *Henry*, supra at 862-863; *Brown*, supra, 253 Ga. App. at 3 (1) (d).

[25] 391 U. S. 123 (88 SC 1620, 20 LE2d 476) (1968).

[26] *Hanifa v. State*, 269 Ga. 797, 803 (2) (505 SE2d 731) (1998).

Absent a *Bruton* claim, OCGA § 24-3-52 arguably governs the admissibility of the statement. Under that provision, "[t]he confession of one joint offender or conspirator made after the enterprise is ended shall be admissible only against himself."[27] It "is designed to protect a defendant from the hearsay confession of a co-conspirator who does not testify at trial."[28] At base, therefore, the provision relates to hearsay admissibility.[29] And we know of no requirement that a trial court give a contemporaneous limiting instruction regarding use of hearsay. Accordingly, this claim of error presents no basis for reversal.[30]

4. In three enumerations of error, Short alleges that the trial court improperly charged the jury on the venue principles in OCGA § 17-2-2 (b), (e), and (h) because the indictment did not inform him that the State planned to use these subsections. In Division 1 (a), however, we rejected Short's claim that the State cannot rely on these subsections unless it references them in the indictment. It follows that these enumerations of error lack merit.

5. The trial court charged the jury that, "[a]lthough slight evidence of venue may be sufficient where the fact of venue is not contested, . . . it is a jurisdictional fact and must be proved beyond a reasonable doubt." In *Jones v. State*,[31] which was decided five years after the trial in this case, our Supreme Court held that the "slight evidence" exception to the venue requirement has no application "once a plea of not guilty is entered and a defendant is put on trial." Short thus argues that the trial court erroneously included the "slight evidence" language in its charge.

Even if error occurred, however, we find no basis for reversal. It is clear that Short contested venue with respect to the offenses — such as the sexual assaults — that occurred after the car exited the Douglasville apartment complex. His trial counsel questioned the investigating officer about venue, and Short asserted in his statement to police, which the jury heard, that the vehicle left Douglas County moments after the kidnapping. By its own terms, therefore, the "slight evidence" language did not apply to those crimes. Moreover, Short admitted to police that the initial attack, including the kidnapping, hijacking, and armed robbery, occurred at the Douglas

---

[27] OCGA § 24-3-52.

[28] *Brown v. State*, 266 Ga. 633, 635 (2) (469 SE2d 186) (1996).

[29] See id.

[30] To the extent OCGA § 24-3-52 also embodies the Confrontation Clause principles discussed in *Bruton*, Short waived any reliance on those principles prior to trial.

[31] 272 Ga. 900, 900-901 (537 SE2d 80) (2000).

County apartment complex. Under these circumstances, it is highly improbable that any alleged error contributed to the verdict, rendering it harmless.[32]

6. Short argues that the trial court erred in refusing to charge the jury that "the elements of proof that one is a party to a crime, or an accomplice, require proof of common criminal intent." We disagree. The trial court fully charged the jury on the definitions of party to a crime and conspiracy. It further instructed that the State must prove beyond a reasonable doubt that "the defendant knowingly and intentionally participated in or helped in the commission of the crime or was a conspirator in [the crime]." And it charged that intent is an essential element of the crime and must be proven beyond a reasonable doubt. Because the charge taken as a whole was adequate, the trial court did not err in refusing to give the requested charge.[33]

7. Short contends that the trial court should have instructed jurors that they "will determine both the law and the facts." We have previously found, however, that a trial court does not err in refusing to include this language in its jury charge.[34]

8. Short also enumerates as error the trial court's refusal to instruct the jury on theft by taking as a lesser included offense of armed robbery. With respect to armed robbery, the indictment charged that Short, Robert, and Cunningham took jewelry from the victim's immediate presence using a gun. The jewelry at issue was in a makeup bag and purse located inside the victim's car.

According to Short, he was entitled to a theft by taking charge because the jury could have determined that the jewelry was not taken from the victim's immediate presence. But "[i]mmediate presence does not mean 'within arm's length' or 'facing.' "[35] And the evidence shows that Short and Robert searched the victim's car for valuables while she was being held outside the vehicle at gunpoint. The victim was then placed in the car and continually held at gunpoint until forcibly placed in the trunk, from which she later escaped. Under these circumstances, we find no evidence that the robbery occurred outside the victim's immediate presence.[36]

---

[32] See *Davis v. State*, 279 Ga. 11, 12-13 (2) (608 SE2d 628) (2005); *Howard v. State*, 220 Ga. App. 579, 583 (2) (469 SE2d 746) (1996).

[33] See *Christopher v. State*, 269 Ga. 382, 383 (3) (497 SE2d 803) (1998) (" 'It is not necessary to give the exact language of a request to charge when the applicable principles are fairly covered by the charge as given.' ").

[34] See *Cornwell v. State*, 246 Ga. App. 686, 687-688 (1) (541 SE2d 101) (2000); *Drummond v. State*, 173 Ga. App. 337, 338 (3) (326 SE2d 787) (1985) (physical precedent only).

[35] *Parker v. State*, 244 Ga. App. 419, 425 (11) (535 SE2d 795) (2000).

[36] See *Morgan v. State*, 195 Ga. App. 732, 734 (1) (394 SE2d 639) (1990) ("[T]he concept of immediate presence is broadly construed if the object taken was under the victim's control or responsibility and the victim is not too distant."); *Waters v. State*, 161 Ga. App. 555, 556 (289

"Where the State's evidence clearly warrants a jury instruction on armed robbery and there is no evidence of the lesser offense of theft by taking, it is not error to refuse to charge the jury as to theft by taking."[37] Accordingly, the trial court properly refused to give the requested charge.[38]

9. In three enumerations of error, Short claims that the trial court erred in instructing the jury on crimes not charged in the indictment. The indictment alleged that Short committed kidnapping with bodily injury by "abduct[ing]" the victim, armed robbery by taking jewelry from the "immediate presence" of the victim, and aggravated sodomy by forcing the victim "to perform a sexual act involving the sex organ of the accused and the mouth of [the victim]." According to Short, however, the trial court instructed the jury on other ways to commit these crimes. Specifically, it charged that a person commits kidnapping "when he abducts or *steals away* any person," armed robbery when he takes property "from *the person* or the immediate presence of another by use of an offensive weapon," and aggravated sodomy "when he performs or submits to a sexual act involving the sex organs of one person and the mouth or *anus* of another."[39]

"Absent a remedial instruction, reversible error occurs if the jury charge recites the statutory definition of a crime (which informs the jury the crime may be committed in various manners) when the indictment alleges that the crime occurred in a specific way."[40] This is so because, without a curative instruction, a fatal variance may result between the proof at trial and the indictment.[41] Any such defect, however, is cured where, as here, the trial court provides the indictment to the jury and instructs that the State must prove beyond a reasonable doubt all material allegations in the indictment and all essential elements of the crimes charged.[42] Thus, these claims of error provide no basis for reversal.[43]

---

SE2d 21) (1982) ("[E]vidence that the victim, while lying in [a] gully, was close enough to the car to hear her assailants talking was sufficient proof that the goods were taken from her presence.").

[37] *Parker*, supra.

[38] See id. at 425-426.

[39] (Emphasis supplied.)

[40] *Green v. State*, 240 Ga. App. 377, 379 (4) (523 SE2d 581) (1999).

[41] See id.

[42] See id. at 379-380; see also *Lumpkin v. State*, 249 Ga. 834, 836-837 (2) (295 SE2d 86) (1982) (although trial court instructed jury on several methods of committing theft by receiving stolen property, any prejudice was cured by remedial charge that limited jury's consideration to the specific method alleged in the indictment).

[43] See *Green*, supra.

10. During its deliberations, the jury asked the trial court to redefine conspiracy and parties to a crime. The trial court recharged the jury on these concepts, using terminology that differed in some respects from the original charge. Short then asked the trial court to reread the following language from the original charge: "each [conspirator] is responsible for the acts of others only insofar as the same are naturally or necessarily done to further the conspiracy." The trial judge refused, asserting that the recharge adequately covered the principle. Short enumerates this refusal as error.

Although the trial court did not use the language requested by Short, the recharge informed jurors that a conspiracy extends to "collateral acts instant to and growing out of the original purpose [of the conspiracy]." According to the recharge, separate independent acts that are "in no way a part of what the original conspirators agreed to do or any consequence thereof, [are] not a part of the conspiracy." The trial court further stated that "if one participant goes and does something that is expedient to whatever the criminal design is, then that can be [the] responsibility of all."

The trial court's language substantially covered the principle included in Short's requested recharge. Furthermore, the requested recharge was part of the original charge to the jury. Under these circumstances, we find no error.[44]

*Judgment affirmed. Johnson, P. J., and Barnes, J., concur.*

DECIDED NOVEMBER 14, 2005 — 

*Marcus C. Chamblee*, for appellant.
*David McDade, District Attorney, Christopher R. Johnson, Assistant District Attorney*, for appellee.

---

[44] See *Smith v. State*, 243 Ga. App. 331, 333-334 (4) (533 SE2d 431) (2000); *Bryant v. State*, 155 Ga. App. 652, 654 (3) (271 SE2d 904) (1980).