## A10A1279. TURNER v. THE STATE.

(705 SE2d 177)

SMITH, Presiding Judge.

Trenell Turner appeals from his conviction of simple battery, a misdemeanor.[1] He contends insufficient evidence supports his conviction and that the trial court erred by refusing to give several requested charges. We disagree and affirm.

1. Viewed in the light most favorable to the verdict, the record shows that Turner and his live-in girlfriend argued about his plans to attend a study group that included three women. The record shows that Turner was employed as a detention officer with the DeKalb County Sheriff's Office and was studying to obtain a promotion to become a deputy. The girlfriend acknowledged that before this incident, she had never experienced problems with Turner losing his temper in the six years she had dated him.

After a "pretty loud" argument about Turner's study plans, the defendant took a shower as he prepared to go to the study group. When he got out of the shower, he "immediately start[ed] accusing" the girlfriend of taking his car keys. She denied taking his keys, and Turner began "going through [her] things, through [her] drawers, throwing everything out all over the room, on the dresser, on the bed." When he did not stop after she asked him to do so, she admitted that she threatened to "go where his papers was in the kitchen and tear them up." By papers, she meant his papers for the POST[2] training that she knew "were critical to his completion" of the training. When he still did not stop, she went into the kitchen and took his papers out of a notebook and placed them on the table.

The victim testified that when Turner came into the kitchen, she explained that she had not torn up his papers. He then blocked her from walking around the table, grabbed her by one arm, pulled her into the living room, threw her chestfirst against the back of the couch and handcuffed her hands behind her back. She repeatedly asked him to stop, and when she told him he would go to jail, Turner responded that "he is the law." When Turner went into the bedroom, she followed him, repeatedly asked him to remove the handcuffs, and told him that she was going to call the police. Turner offered to call 911 for her and held the phone up to her ear. Turner did not remove the handcuffs before the police arrived despite his girlfriend's repeated requests.

When police officers arrived, they immediately removed the handcuffs from the girlfriend. In the bedroom, they observed

---

[1] The jury acquitted Turner of false imprisonment.

[2] POST is an abbreviation for the Georgia Peace Officer Standards and Training Council.

"clothes everywhere, meaning bras, panties, pajamas, just clothes everywhere."

Turner testified that he told his girlfriend that she could get in trouble if she tore up his training papers as she had threatened. In his opinion, she could have been arrested if she had done so. He explained that when she went into the kitchen he thought "she's going to tear up my papers because she had been destructive in the past, like, she had broken stuff and thrown stuff . . . in the past." When he went into the kitchen, he saw her pulling pages out of the book and asked her to stop. According to Turner, she replied, "I'm not going to stop if you keep on messing with my clothes." This gave Turner

> the impression that she was actually going to go through with what she threatened to do, so I made the decision to go ahead and go towards her. I picked her up from behind. . . . She was still at the table. I grabbed her right arm, pulled her towards me. I picked her up from behind and picked her up off her feet. Now, when she was not on the floor anymore, she started struggling. She was struggling, like, let me go, let me go, and I was, like, I'm not going to allow you to tear these papers up.

He testified that he handcuffed her because he did not want anyone to get hurt in a struggle and because he knew that handcuffing her would ensure that his papers would not get torn up. He refused to let her out of the handcuffs because she refused to promise that she would not tear up his papers. He admitted that she told him she was not really going to tear up his papers while she remained in handcuffs waiting for the police to arrive. He decided against releasing her from the handcuffs before the deputies arrived because he did not want her to get aggressive toward him after being released. Finally, he admitted that he obtained the handcuffs from his bag before entering the kitchen and before he determined whether she had done anything to his papers. He denied throwing her clothing "around the room," claiming instead that he placed them on the bed.

We find this evidence sufficient to support Turner's conviction of simple battery.

2. Turner contends the trial court erred by declining his requests to charge on arrest by a private person, interference with government property, criminal damage to property in the second degree, and criminal trespass.

The record shows that the trial court gave the following charge

on Turner's sole defense of justification:

> An affirmative defense is a defense that admits the doing of the act charged but seeks to justify, excuse, or mitigate it. Once an affirmative defense is raised, the burden is on the state to disprove it beyond a reasonable doubt.
>
> A person is justified in threatening or using force against another when and to the extent the person reasonably believes that such threat or force is *necessary to prevent or terminate the other's trespass on or other tortious or criminal interference with personal property that is lawfully in the person's possession*.

(Emphasis supplied.) The trial court refused to give Turner's requested charge on private arrest because Turner did not testify that he was arresting his girlfriend when he placed her in handcuffs. Based upon this conclusion, the trial court determined that the requested charges on interference with government property, criminal damage to property in the second degree, and criminal trespass were not supported by the evidence.

(a) We affirm the trial court's ruling with regard to the requested charges on arrest by a private person, interference with government property, and criminal damage to property in the second degree because "it is not error to refuse a requested charge when there is no evidence to support it." (Citation and footnote omitted.) *Monsalve v. State*, 271 Ga. 523, 526 (3) (519 SE2d 915) (1999). In this case, no evidence was submitted showing that Turner's girlfriend "destroy[ed], damage[d], or deface[d] government property"[3] or "intentionally damage[d] any property of another person without his consent."[4] Likewise, no evidence shows that Turner placed his girlfriend in handcuffs in the course of a private arrest; it shows instead that he was simply trying to prevent her from destroying his notebook. See OCGA § 17-4-60 (defining private arrest).

(b) We also affirm the trial court's ruling with regard to criminal trespass because the justification charge adequately addressed this concept for the jury. "Because the charge taken as a whole was adequate, the trial court did not err in refusing to give the requested charge." *Short v. State*, 276 Ga. App. 340, 348 (6) (623 SE2d 195) (2005). The charge given by the trial court "did . . . fully explain the concept of justification." *Christopher v. State*, 269 Ga. 382, 383 (3)

---

[3] OCGA § 16-7-24 (a) (interference with government property).

[4] OCGA § 16-7-23 (a) (1) (criminal damage to property in the second degree).

(497 SE2d 803) (1998).
*Judgment affirmed. Mikell and Adams, JJ., concur.*

DECIDED OCTOBER 27, 2010 —
RECONSIDERATION DENIED DECEMBER 14, 2010.

*Teresa L. Smith*, for appellant.
*W. Kendall Wynne, Jr., District Attorney, Melanie M. Bell, Assistant District Attorney*, for appellee.