## A10A1014. SMITH v. THE STATE.
(703 SE2d 329)

ADAMS, Judge.

Braja Smith was convicted by a jury of felony theft by shoplifting. He appeals following the trial court's denial of his motion for new trial.

The evidence shows that on the afternoon of June 14, 2008, an unidentified man with dreadlocks, wearing a white t-shirt entered the Wal-Mart in Loganville. Shortly thereafter, Sean Harris entered the Wal-Mart and met up with the unidentified man in the electronics department. Harris retrieved a shopping cart, and the two men placed a computer into it. A Wal-Mart employee saw them remove the security device from the packaging and wheel the cart to another department, where they opened the computer box. The unidentified man then pushed the cart past the cash registers and left it at the front of the store. He exited the store hand-in-hand with a little girl and did not return.

A short time later, Harris re-entered the Wal-Mart with Smith and directed him to the shopping cart with the computer at the front of the store. Smith pushed the cart to the service desk, accompanied by Harris. Mertoni Collins, the customer service manager, was working at the service desk when Smith arrived with the computer and said that he wanted to return it. Collins told Smith that he needed a receipt and a sticker from the greeter in order to make a return. She told him that she could not get him a sticker, but she could walk him to the store entrance where a sticker could be obtained. Smith followed Collins to the entrance where she proceeded to walk out of the store. Smith was apprehended by Wal-Mart loss prevention officers as he attempted to follow her out.[1]

1. Smith first asserts that the trial court improperly expressed its opinion of the case in front of the jury in violation of OCGA § 17-8-57. Under that statute, "[i]t is error for any judge in any criminal case, during its progress . . . to express or intimate his

---

[1] At trial, the jury was shown a videotape of these events.

opinion as to what has or has not been proved or as to the guilt of the accused." A violation of this statute entitles the accused to a new trial. OCGA § 17-8-57.

In support of this argument, Smith points to the sequence of events after the State first announced it was resting its case. Collins was on the stand and started to step down when the trial court called her back. An off-the-record bench conference then ensued.[2] Afterward, the trial court instructed Collins to step down and asked for the first defense witness. Smith's attorney interrupted, however, and asked to re-cross-examine Collins. When asked the location of the Wal-Mart, Collins stated that she had heard that the store straddled the Walton/Gwinnett County lines, but she did not know if it was true, nor did she know which part of the store was in a particular county. The trial court then told the prosecution, "You need to call another witness there. . . ."

The prosecutor replied, "Okay," and called Officer Kenneth Welchel from the Loganville Police Department. As the prosecutor began to question Welchel about his knowledge of Smith's arrest, the trial court interrupted to say, "Counsel, I really only want one issue. Does he have knowledge?" In response to the prosecutor's questions, the officer stated that he was familiar with the Loganville Wal-Mart, and it was in Walton County. The trial court then questioned him as follows:

Court: Does the county line go down the middle of the store?

Witness: It's like right on the edge of [the store].

. . .

Court: But the whole store itself, is it physically in Walton County?

Witness: They say — consider it as being in Walton County.

Court: Who is they?

Witness: That's what I've been told.

Court: In your knowledge, it's all in Walton County, the store itself?

Witness: Yes sir.

The trial court asked no other questions and after ascertaining that

[2] At the hearing on the motion for new trial, the trial judge recalled that he had asked counsel during that bench trial whether venue had been proven. The prosecutor replied that it had, and, in fact, Collins had previously testified that the Wal-Mart was in Walton County. The trial court recalled that it was only after this bench conference that Smith raised questions about venue.

neither counsel had further questions, instructed the witness to step down.[3]

Smith argues that the jury could have inferred from this sequence of events that the trial court and the prosecution were aligned in proving venue because the State, which had previously rested its case, called Welchel only when directed by the trial court. He also asserts that the trial judge exacerbated the issue when it limited the prosecution's examination of the officer to questions about venue and then took over the questioning himself. When the judge finished his questions, the prosecution rested, and Smith argues that this gave the impression that both the trial court and the State were satisfied that venue had been proven.

The Supreme Court of Georgia recently addressed the application of OCGA § 17-8-57 in two cases where a trial court intervened on the issue of venue. In *State v. Gardner*, 286 Ga. 633 (690 SE2d 164) (2010), after the State finished examining its first witness, the trial court directed the State to "Prove venue. Did you prove venue?" When the prosecutor replied that he had not proven venue "as of yet," the trial court stated, "Why don't we go ahead and do that before we forget it?" Id. This Court found the trial judge violated OCGA § 17-8-57, but the Supreme Court reversed, explaining:

> Although we strongly discourage the giving of direction or the use of language that could create the appearance of alignment between the trial court and either the prosecution or defense, the trial court did not "express or intimate (its) opinion as to what has or has not been proved," OCGA § 17-8-57, because its directive to "(p)rove venue" was immediately followed by a question as to whether venue had been proven.

Id. at 635.

But in *State v. Anderson*, 287 Ga. 159 (695 SE2d 26) (2010), the Supreme Court upheld this Court's determination that a violation of OCGA § 17-8-57 had occurred. In *Anderson*, the State completed examining a witness, and the trial court asked whether "we establish[ed] venue with this one?" The judge then elicited testimony stating that the store at issue was in the proper county. The judge went on to explain, "I know we had some confusion because she had

---

[3] Although Smith's trial attorney did not raise an objection at trial, the Supreme Court of Georgia has "clarified that a violation of OCGA § 17-8-57 will *always* constitute 'plain error,' meaning that the failure to object at trial will not waive the issue on appeal." (Emphasis in original.) *State v. Gardner*, 286 Ga. 633, 634 (690 SE2d 164) (2010), citing *Chumley v. State*, 282 Ga. 855, 858 (2) (655 SE2d 813) (2008).

worked at one store and she's now working in another one. *I just wanted to make sure.*" (Emphasis supplied.) Id. at 160 (1). The Supreme Court found that the trial judge had stepped over the line, stating that

> the trial court's comments went beyond those in *Gardner,* ultimately resulting in an expression of opinion. Although a trial judge has the discretion to propound questions to a witness in order to clarify testimony, the comment "I just wanted to make sure" following the trial court's questioning of the witness constituted an expression of opinion that venue had in fact been proven.

Id. at 160-161 (1). See also *Patel v. State*, 282 Ga. 412, 413 (2) (651 SE2d 55) (2007) (court's comment that venue was proper or "we wouldn't be here right now" during defense counsel's opening statement violated statute).

We find that this case is more akin to *Gardner*. Although the trial judge told the State that it needed another witness after venue was put into question, the only possible inference was that venue had not been proven. And it was within the trial court's discretion to limit the scope of Welchel's testimony to the issue of venue, as the State had already rested its case. The trial court also had discretion to propound its own questions to the officer. See *Dickens v. State*, 280 Ga. 320, 324 (3) (627 SE2d 587) (2006) ("trial judge may propound questions to a witness to develop the truth of the case, to clarify testimony . . . in order to enforce its duty to ensure a fair trial to both sides"). He did not comment upon Welchel's testimony, but rather offered both parties an opportunity to follow up his questions with their own. The trial court never stated that the alleged crime took place in Walton County and never expressed his opinion or commented on what had been proven. See *Sims v. State*, 296 Ga. App. 368, 370 (2) (674 SE2d 392) (2009), disapproved on other grounds, *Gardner*, 286 Ga. at 634. Thus, we conclude that no violation of OCGA § 17-8-57 occurred.

2. Smith next argues that the trial court abused its discretion in refusing to re-open the evidence after he requested to testify, which violated his constitutional right to testify in his own defense, citing *United States v. Teague*, 953 F2d 1525, 1531 (11th Cir. 1992). He argues that presenting his own testimony was the only possible method for rebutting the State's case.

"It is always within the sole discretion of the trial court to permit either the [S]tate or the defense in criminal cases to reopen the case after the close of the evidence." (Punctuation and footnote omitted.) *State v. Gravitt*, 289 Ga. App. 868, 870 (1) (658 SE2d 424)

(2008). And "[a] trial court's ruling in this regard will not be reversed in the absence of an abuse of discretion. Whether there has been a reversible abuse of discretion requires a consideration of the totality of the circumstances." (Footnote omitted.) *Burnette v. State*, 291 Ga. App. 504, 511 (3) (662 SE2d 272) (2008). Nevertheless,

> [a] criminal defendant has a constitutional right to testify in his or her defense, that right is personal to the defendant, and the decision whether to testify is made by the defendant after consultation with counsel. *Mobley v. State*, 264 Ga. 854 (2) (452 SE2d 500) (1995), citing *Rock v. Arkansas*, 483 U. S. 44 (107 SC 2704, 97 LE2d 37) (1987), and *United States v. Teague*, 953 F2d 1525 (11th Cir. 1992).

*State v. Nejad*, 286 Ga. 695, 696 (1), n. 2 (690 SE2d 846) (2010).

After Officer Welchel testified, the State rested its case. Smith's counsel chose not to put up any witnesses, and the trial court announced that the evidence was closed.[4] The trial court subsequently allowed the State to excuse its witnesses, noting again that the evidence had been closed. Each side then gave a closing argument, the trial court gave the jury charge and the jury retired for deliberations. Immediately afterward, Smith's trial attorney indicated that Smith wanted to address the court "to express his dissatisfaction with his counsel." Smith told the trial court that he did not know beforehand how his counsel planned to challenge the prosecution, but he felt there were "a lot of questions" that had not been answered. He informed the trial court that his counsel had advised him not to take the stand, but he believed "it would be in my best interest to take the stand and let the jury, you know, hear what I have to say. . . ."

The trial court invited Smith to explain what he would say. Smith started to explain his actions the day of the incident, but his counsel interrupted because she believed that he was incriminating himself for any potential re-trial. The trial court rejected her intervention, on the ground that Smith had "waived the right to an attorney/counsel privilege" when he asserted his trial counsel was incompetent. Smith told the court that he had been in a car with

---

[4] The trial court did not make an inquiry into whether Smith had made a knowing waiver of his right to testify. But

> [t]here is no requirement in Georgia that the trial court engage in an on-the-record colloquy with a non-testifying defendant to inform the defendant of the right to testify and to obtain a knowing and intelligent waiver of that right. However, it has been suggested that trial courts should engage in such a colloquy as a prophylactic measure.

(Citations omitted.) *State v. Nejad*, 286 Ga. at 693 (1), n. 3.

Sean Harris that day, but he was asleep when they arrived at the Wal-Mart. He wanted to tell the jury that he had no knowledge of any kind of crime when he later entered the store with Harris. Smith said he grabbed the cart and got in line at the service desk because that is what Harris told him to do. After ascertaining that this was all the evidence Smith wanted to present to the jury, the judge directed him to have a seat, and court was recessed. No further action was taken on Smith's request. Neither Smith nor his trial counsel ever explicitly asked that Smith be allowed to testify.

At the hearing on the motion for new trial, Smith's trial attorney said she informed Smith that he had a right to testify, but she advised against it because he had a number of felony convictions and she thought that could affect his credibility. She said that they "had several conversations about it. I know it was something that we went back and forth on. But in the end he agreed with me." Smith also testified that he had spoken with his attorney on numerous occasions about whether he would testify at trial. She informed him that he had the right to testify, but she advised him not to because if he did, he would "suffer the consequences." He listened to his lawyer's advice and chose not to testify.

It is apparent that Smith reconsidered that decision after listening to closing arguments, and the question before us is "whether a defendant, who waived [his] right to testify during the presentation of the evidence, can reassert [his] right if [he] disagrees with [his] counsel's presentation of the closing arguments." *United States v. Cummings*, 2009 WL 2058845 at *3 (E.D. Wash. 2009). Although the United States Supreme Court established in *Rock v. Arkansas* that "the right to testify on one's own behalf in defense to a criminal charge is a fundamental constitutional right," 483 U. S. at 53, n. 10, the Court also stated that a defendant's "right to present relevant testimony is not without limitation[ and] 'may, in appropriate cases, bow to accommodate other legitimate interests in the criminal trial process.' " Id. at 55 (quoting *Chambers v. Mississippi*, 410 U. S. 284, 295 (93 SC 1038, 35 LE2d 297) (1973)). Nevertheless, "restrictions of a defendant's right to testify may not be arbitrary or disproportionate to the purposes they are designed to serve." *Rock*, 483 U. S. at 55-56.

Smith's request to address the trial court was couched as a complaint about his attorney and not as a request to testify. To the extent Smith's complaint reflected his intent to invoke his right to testify, however, we find that he asserted this right too late, regardless of his dissatisfaction with his counsel's performance. To permit Smith to reopen the evidence after closing arguments and after the State had released all of its witnesses would have detrimentally affected the fairness and legitimacy of the trial. A requirement that

"a defendant . . . exercise [his] right to testify prior to the close of evidence is not 'arbitrary or disproportionate to the purposes (it is) designed to serve.' " *Cummings*, 2009 WL 2058845 at *4, citing *Rock*, 483 U. S. at 57. See also *Manning v. State*, 259 Ga. App. 794, 797 (3) (578 SE2d 494) (2003) (no abuse of discretion in refusing to reopen evidence prior to closing argument to allow defendant to testify); *United States v. Byrd*, 403 F3d 1278, 1287-1288 (II) (11th Cir. 2005) (no abuse of discretion in denying defendant's request to testify made before closing arguments, but after State's witnesses had been released). Moreover,

> [a]llowing a defendant to have two trials, one based on his lawyer's strategy (where the defendant does not testify) and one based on his own strategy (where the defendant does testify), does not promote fairness, justice, or order, and preventing this type of situation from arising is clearly a "legitimate interest in the criminal trial process."

(Citations and punctuation omitted.) *United States v. Pino-Noriega*, 189 F3d 1089, 1096 (9th Cir. 1999). See also *United States v. Jones*, 880 F2d 55, 60 (8th Cir. 1989). Accordingly, we find no abuse of discretion in this case.

3. Smith next asserts that his trial counsel was ineffective in failing to advise him to testify after the State rested.

> In order to prevail on a claim of ineffective assistance of counsel under *Strickland v. Washington*,[5] [Smith] must prove both that his trial counsel's performance was deficient and that there is a reasonable probability that the trial result would have been different if not for the deficient performance.

(Citation and punctuation omitted.) *Reid v. State*, 286 Ga. 484, 485-486 (3) (690 SE2d 177) (2010). "Failure to satisfy either [part] of this two-part test is fatal to an ineffective assistance claim." (Footnote omitted.) *Thomas v. State*, 291 Ga. App. 795, 804 (6) (662 SE2d 849) (2008). Moreover, "[a] trial court's finding that a defendant has been afforded effective assistance of counsel will be affirmed on appeal unless clearly erroneous." (Punctuation and footnote omitted.) *Smallwood v. State*, 296 Ga. App. 16, 21 (4) (673 SE2d 537) (2009).

It is well settled that counsel bears "the primary responsibility

---

[5] 466 U. S. 668 (104 SC 2052, 80 LE2d 674) (1984).

for advising the defendant of his right to testify and the strategic implications of this choice, as well as for informing the defendant that the decision whether to testify is his to make." *Thomas v. State*, 282 Ga. 894, 896 (2) (b) (655 SE2d 599) (2008). Smith admits that his counsel discussed his right to testify and advised him of the potential consequences of taking the stand, and he admits that he made the decision not to testify. Smith asserts, however, that his trial attorney should have re-visited the issue at the close of the State's evidence because he contends his attorney did not understand the State's case until that point and his testimony was the only possible evidence for rebutting the State's case as presented at trial.

At the hearing on the motion for new trial, Smith's attorney admitted that she was surprised at trial when Collins implicated Smith more directly in the return of the computer than she had in a pre-trial interview. The attorney also acknowledged that the only evidence she had to directly rebut Collins's version of events was Smith's own testimony. But trial counsel also said she did not re-visit the issue of Smith's taking the stand because at the time she did not want him to testify due to his prior felony convictions. She stated, "Now, in retrospect, I may think differently, but at the time, no, I didn't — I didn't want him to testify."

Rather than present evidence, Smith's attorney argued in her closing that the State had not proven its case beyond a reasonable doubt. She asserted that the Wal-Mart employees had acted precipitously in arresting Smith as he followed Collins out the door because his intention with regard to the computer was unclear. She pointed to omissions in the State's evidence, including the lack of security footage from the parking lot to show any connection with the unidentified man and the failure to produce the security device that the Wal-Mart employee claimed to have seen Harris and the other man remove.

A trial attorney has no obligation "to inform a defendant of a 'continuing' right to testify or, as in this case, to re-advise a defendant of the right to testify after the State presents [its] evidence." *Thomas v. State*, 282 Ga. at 896-897 (2) (b). Smith's counsel previously advised him not to testify because she was concerned that it could open the door to evidence of his prior felonies and undercut his credibility.[6] "Such advice is a classic example of trial strategy and tactics that do not fall outside the wide range of reasonable professional conduct. [Cit.]" *Mathis v. State*, 265 Ga. App.

---

[6] Smith's counsel apparently was concerned that he might open the door to such evidence, and, in fact, he did so at the motion hearing when he testified that he did not understand Wal-Mart's return policies because he had not been there since he got "out of the chain gang."

541, 544 (2) (a) (594 SE2d 737) (2004). See also *Phillips v. State*, 285 Ga. 213, 218-219 (5) (a) (675 SE2d 1) (2009); *Williams v. State*, 239 Ga. App. 598, 599 (521 SE2d 650) (1999). Although Smith's current counsel may not agree with that strategy and even his trial attorney may have rethought her earlier decision, "this Court does not evaluate effectiveness of trial counsel by hindsight or by what present counsel would have done." *Smallwood v. State*, 296 Ga. App. at 25 (4) (e). Smith failed to show that his counsel's performance was deficient under the criteria set out in *Strickland v. Washington*. "A defendant is entitled not to perfect representation but to reasonably effective assistance." (Citation and punctuation omitted.) *Turner v. State*, 246 Ga. App. 49, 57 (6) (539 SE2d 553) (2000). Accordingly, it was not clear error for the trial court to deny Smith's motion for new trial on this ground.

*Judgment affirmed. Smith, P. J., and Mikell, J., concur.*

DECIDED NOVEMBER 3, 2010.

*Charles E. W. Barrow*, for appellant.

*W. Kendall Wynne, Jr., District Attorney, Walter C. Howard, Assistant District Attorney*, for appellee.