A11A1814. POWERS v. THE STATE.
(725 SE2d 848)

BARNES, Presiding Judge.

A jury convicted Charles Powers of rape, aggravated sodomy, burglary, and false imprisonment, and the trial court sentenced him to two consecutive life sentences followed by twenty-five years on probation. He appeals, contending that the trial court erred in denying his motion for continuance, his motion to suppress his statement, his mid-trial motion to proceed pro se, and his motion for a mistrial. He also contends that the evidence against him was insufficient and that his trial counsel was ineffective for failing to object to the victim's in-court identification of him. For the reasons that follow, we affirm.

1. Powers contends that the trial court erred in denying his motion for a continuance based on a discovery violation and his motion for a continuance to investigate whether he had mental issues that affected his ability to assist his counsel at trial.

(a) Before voir dire began, Powers asked the trial court for permission to act as co-counsel. The trial court explained that Powers could not act as co-counsel, but had to choose whether to represent himself or to be represented by counsel. "Although a defendant has a right to represent himself, he does not have the right to act as co-counsel." *Isaacs v. State*, 259 Ga. 717, 731 (24) (386 SE2d 316) (1989). Powers elected to continue being represented by his lawyer, and the trial court granted his request for time to confer with his lawyer. After they conferred, trial counsel announced that Powers wanted him to ask the court for a continuance because, among other things, he did not receive a complete witness list until three or four days earlier.

The State responded that although it had added Powers' current wife to the State's list of witnesses, she was not a "surprise" witness because Powers knew of her existence and of any relevant contact he had with her during the events at issue. She was added to the witness list as soon as the State discovered she was available to testify, on the Friday before trial. The State also admitted that it had added a police officer to its witness list as a substitute for another officer who might not be available to testify about events surrounding Powers' capture after he escaped from custody. The trial court denied the motion for continuance based on a discovery violation.

Powers renewed the motion when the substitute officer was

called as a witness, but withdrew it after the State presented evidence it had given him notice of the change. He did not object when the State called Powers' wife to testify during its rebuttal.

OCGA § 17-16-8 (a) directs the State to provide a witness list to the defendant no later than ten days before trial, "unless for good cause the judge allows an exception to this requirement, in which event the counsel shall be afforded an opportunity to interview such witnesses prior to the witnesses being called to testify." The purpose of the statute is to prevent a defendant from being surprised at trial by a witness he has not had an opportunity to interview. *Morris v. State*, 268 Ga. App. 325, 326-327 (1) (601 SE2d 804) (2004). We review for abuse of discretion a trial court's decision about the imposition of sanctions or grant of a continuance due to the State's failure to comply with discovery. *Brown v. State*, 236 Ga. App. 478, 481 (3) (512 SE2d 369) (1999).

In this case, Powers waived the issue with regard to the substituted police officer because he withdrew his objection. He did not ask to interview either witness before they testified and does not contend that he was surprised by the witnesses' testimony or prejudiced by not knowing earlier that they were going to testify. Further, he made no showing that the State acted in bad faith in failing to list either witness earlier. Accordingly, the trial court did not abuse its discretion in denying Powers' motion for a continuance and permitting the witnesses to testify. *Taylor v. State*, 305 Ga. App. 748, 753 (2) (a) (700 SE2d 841) (2010); *Rollinson v. State*, 276 Ga. App. 375, 378 (1) (c) (623 SE2d 211) (2005).

(b) Following a *Jackson-Denno* hearing on the admissibility of Powers' statement to police, trial counsel announced that Powers had informed counsel for the first time that he had an extensive mental health history and had asked counsel to seek a continuance for an evaluation of his competence to stand trial. The trial court took the matter under advisement until the next morning, when it denied the motion in a written order. The court found that Powers had not been diligent in telling his lawyer about any mental health issues until after the jury had been selected and sworn. The court further found that Powers had presented insufficient evidence of mental incompetence to require an evaluation, especially considering "the coherence and intelligence" he demonstrated during his testimony at the hearing the day before and during his taped interview with the detective on the day of the crimes.

Mental competency is presumed, so absent evidence of a defendant's incompetency, a trial court need not conduct a competency hearing. *Strong v. State*, 263 Ga. 587, 590 (5) (436 SE2d 213) (1993). If the court has sufficient information at the time of trial to raise a bona fide doubt about the defendant's ability to understand the

proceedings, appreciate their significance, or assist his lawyer in presenting his defense, the court must conduct a competency hearing. *Mitchell v. State*, 207 Ga. App. 306, 308 (3) (427 SE2d 814) (1993); *White v. State*, 202 Ga. App. 424, 425 (414 SE2d 328) (1992). Here, the record contains no evidence that Powers had been behaving irrationally or that medical opinions existed about his competence to stand trial. The trial court found that Powers' demeanor during court proceedings had been appropriate. Accordingly, absent evidence of incompetence, the trial court did not err in denying Powers' motion seeking a continuance so he could be evaluated on his competence to stand trial. *Flesche v. State*, 254 Ga. App. 3, 4-6 (1) (561 SE2d 160) (2002).

2. Powers challenges the admission into evidence of a recorded statement he made to an FBI agent, arguing it was not voluntary because he was under the influence of prescription drugs when he gave it. He contends that he tried to tell the agent which medications he was taking, but the agent would not let him. He also argues he was not adequately informed of his *Miranda* rights, and that the State did not show he understood those rights.

"[T]he determination of whether a waiver of rights and a subsequent statement are knowing and voluntary depends on the totality of the circumstances." (Citation and punctuation omitted.) *Rivera v. State*, 282 Ga. 355, 359 (4) (647 SE2d 70) (2007). We will affirm a trial court's factual determinations and credibility findings related to the admissibility of statements unless they are clearly erroneous. Id. at 360 (4) (a). Here, the trial court in a written order considered Powers' age (42), education (a GED and two years of technical college), his knowledge of the charges and of his right to remain silent and consult an attorney (the interview confirmed he knew about the charges and his rights), whether he was held incommunicado (he was not even under arrest, but came to the station voluntarily), the methods of interrogation (no coercive techniques), the length of the interview (less than an hour), whether he had previously refused to give a statement (he had not), and whether he later repudiated the statement (not until the trial, when his lawyer requested a hearing). The trial court concluded that even though the interview was noncustodial, Powers was still advised of his *Miranda* rights, which he understood and waived. The trial court found that, although Powers testified during the *Jackson-Denno* hearing that he had been under the influence of prescription drugs when he gave his statement,

> the recording clearly show[ed] that his voice was clear, strong and his responses to questions were promptly and clearly given. His speech was not slurred and the court

could detect no other indicia of intoxication. On the recorded statement, [Powers] eloquently read the entire *Miranda* waiver form aloud, correctly pronouncing all of the words, without pausing or stumbling. He was also alert, responsive and detailed in his answers.

The court noted that the FBI agent testified that Powers did not appear to be under the influence of drugs, and the court concluded that Powers' statement was admissible because it "was the product of rational intellect and free will, that defendant was in control of himself, was coherent, knew what he was saying, and that he understood his rights and knew what was going on."

"The evidence supports the trial court's findings in favor of admissibility." *Rivera*, 282 Ga. at 359 (4) (a).

3. Powers asserts that his trial counsel was ineffective for failing to object to the victim's in-court identification of Powers as her assailant. Powers' defense was that the victim consented to sexual activity; therefore identification was not an issue at trial. The assertion that trial counsel was ineffective for not objecting to the victim's identification of Powers is therefore without merit.

4. Powers contends that the trial court erred in refusing his mid-trial request to fire his lawyer and proceed pro se, without ascertaining his competence or affording him a hearing.

As discussed previously, before the jury was struck, Powers asked for permission to act as co-counsel with his appointed lawyer, and when given the option of representing himself or retaining his trial counsel, he decided to retain his counsel. The trial proceeded and on the third day, after eleven witnesses had testified for the State, the defendant's four witnesses had testified for the defense, and the defense had rested, Powers advised his attorney that he wanted to take over his defense. Powers told the court that there were "several things that [his] attorney ha[d] not brought out," and wanted to recall the victim, her friend, the FBI agent, and the nurse who had examined the victim after the rape, to ask them more questions. The trial court denied the request, noting that all of those witnesses had been excused and observing that Powell wanted to "basically, overrule counsel . . . to bring out in rebuttal things that [his] attorney decided [Powers] should not bring out."

We find no error. "A request for self-representation must be made before trial. The denial of such a request made after the beginning of trial is not reversible error." (Citation omitted.) *Coley v. State*, 272 Ga. App. 446, 448 (1) (612 SE2d 608) (2005). "[A] defendant cannot frivolously change his mind in midstream by asserting his right to self-representation in the middle of his trial." (Citation and punctuation omitted.) *Thaxton v. State*, 260 Ga. 141,

142 (2) (390 SE2d 841) (1990).

5. Powers asserts that the trial court erred in denying his hearsay objection as untimely, and, confusingly, addresses the standard to be considered in assessing an ineffectiveness of counsel claim. But the trial court sustained Powers' hearsay objection and gave the jury curative instructions, although it denied Powers' motion for a mistrial. It was the State who argued, unsuccessfully, that the objection was untimely. Accordingly, this enumeration of error presents nothing for review.

6. Finally, Powers contends that the evidence was insufficient to sustain the verdict, because the victim never saw a weapon and never testified that Powers made a direct threat, only that he said "he would have to get tough" if she did not cooperate with him. He asserts that this statement "is too vague to constitute the force necessary to constitute a rape," and that the evidence was consistent with his testimony that his "encounter" with the victim was consensual. Further, he argued, while there was evidence of a footprint on the victim's bedroom door, no evidence tied him to the footprint, and "no . . . tools [were] found that would allow an individual to break into the house," which presumably is an argument that the evidence was insufficient to sustain the burglary conviction. Finally, he states the standard required for conviction in a circumstantial evidence case.

The evidence in this case is much more than circumstantial, and is sufficient to sustain the convictions. The victim testified that the night before Thanksgiving 2007, before going to bed she locked the deadbolt, chain, and doorknob lock on her back door, and then placed a bar under that doorknob, as well as locking her bedroom door and placing a bar under that doorknob. Despite those precautions, a "very very loud sound" woke her at 3:30 a.m. to see a man stumbling over the doorknob bar into her bedroom. The sound was the doorknob breaking off of her door. She thought it was a nightmare at first and when she realized it was not, she became "hysterical" and thought she would pass out. Powers told her that she could participate in what he wanted to do or he could use force, and she thought that "anybody [who] would come through six locks would do most anything." She felt helpless, knowing she would lose in a battle of force. She "pleaded and begged no," prayed, "kind of got numb," went into a state of shock, and removed her gown and underwear as Powell directed. For the next three and a half hours, Powers had intercourse with her for all but about twenty minutes. He also used his mouth on her genitalia, and left "drool" on her body, from which his DNA later was identified.

Powers finally left the victim's house around 7:00 a.m., and after hearing the back door shut, the victim left her house through a

sliding glass door in her room. She knew her assailant was Powers, whom she had known all her life, and thought he would head toward his mother's house three blocks away. She feared running into him outside, but she got to her car and drove away without encountering him.

The victim called her friends on a cell phone she had left in the car, then drove to their house. Her friend called the police, who came and directed her to a rape crisis center, where a nurse examined her and removed biological evidence from her body to send to the GBI crime lab for DNA testing. The nurse was qualified as an expert in sexual assault examination and testified that the victim had injuries to her breast, thigh, and collarbone area, along with bruising, abrasions, and a laceration in and around her genitalia. These injuries were consistent with forcible sexual intercourse. An expert in forensic DNA analysis testified that the DNA profile found in a specimen removed from the victim's body after the assault matched Powers' DNA profile.

This evidence was sufficient to sustain Powers' convictions for rape, aggravated sodomy, burglary, and false imprisonment. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

*Judgment affirmed. Adams and Blackwell, JJ., concur.*

DECIDED MARCH 12, 2012.

*Brandon Lewis*, for appellant.
*T. Craig Earnest, District Attorney, Mark C. Post, Assistant District Attorney*, for appellee.