## S12A0524. DANENBERG v. THE STATE.
(729 SE2d 315)

BENHAM, Justice.

In 2008, a Jones County jury found appellant Robert Danenberg guilty of malice murder arising out of the 1988 fatal shooting of Deborah Penland Lamb.[1] He now appeals, asserting that several rulings made by the trial court constitute reversible error.

---

[1] Mrs. Lamb was killed on November 13, 1988, and appellant was arrested shortly thereafter. In 1989, after the State filed notice of intent to seek the death penalty, appellant pled guilty to charges of malice murder and aggravated assault and was sentenced to life imprisonment and a term of years. Appellant's petition for a writ of habeas corpus was granted in 2005 when the habeas court found appellant's trial counsel had provided ineffective assistance in

1. The State presented evidence that appellant was estranged from his wife in 1988 and that she took their infant child with her to Jones County to stay with friends, Carey and Deborah Penland Lamb. Appellant drove his mother's red Suzuki Samurai to the Jones County home of the Lambs in November 1988 to visit his child. While there, he shot Deborah Lamb multiple times in front of her three- and five-year-old sons while she was sitting in a chair and holding Danenberg's infant son. The medical examiner who performed the autopsy testified that Mrs. Lamb died as a result of the gunshot wounds to her head, with a gunshot wound to her chest a secondary cause of death. A person identifying himself as Bob Danenberg called for emergency help and told responding personnel that he had shot the victim. Wipings of appellant's hands tested positive for gunshot residue. The evidence was sufficient to authorize the jury to find appellant guilty beyond a reasonable doubt of the malice murder of Deborah Lamb. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

2. Appellant contends the trial court wrongfully denied him his constitutional right to represent himself at trial. See *Faretta v. California*, 422 U. S. 806 (95 SC 2525, 45 LE2d 562) (1975); 1983 Ga. Const., Art. I, Sec. I, Par. XII. The pre-trial unequivocal declaration of a defendant that he wishes to represent himself must be followed by a hearing at which it is determined that the defendant knowingly and intelligently waives "the traditional benefits associated with the right to counsel." *Faretta v. California*, supra, 422 U. S. at 835-836; *Thaxton v. State*, 260 Ga. 141 (2) (390 SE2d 841) (1990).

After excusing prospective jurors for lunch on November 13, 2008, the first day of voir dire in appellant's trial, the trial court placed on the record its receipt of a communication from appellant in which the trial court was made aware of appellant's desire to dismiss his counsel. In the handwritten note addressed to the trial judge, appellant informed the court that defense counsel were presenting an insanity defense against appellant's "direct order" and that appellant

---

failing to investigate possible side effects of medication Danenberg had been taking at the time of the crimes, and for operating under a conflict of interest when, at the time of the plea, trial counsel was also representing the district attorney in an unrelated matter concerning his exercise of peremptory challenges. This Court affirmed the grant of relief due to the conflict of interest. *Howerton v. Danenberg*, 279 Ga. 861 (621 SE2d 738) (2005). Appellant's 2006 re-trial was continued when he was found to be mentally incompetent to stand trial. In November 2008, a special jury found Danenberg competent to stand trial, and his criminal trial took place November 13-14, 17-20, 2008. He was found guilty of malice murder, and his sentence of life imprisonment was filed on November 20, 2008. A motion for new trial, timely filed on December 11, 2008, was amended February 1, 2010, was the subject of a hearing in September 2010, and was denied April 14, 2011. A notice of appeal was filed timely on May 10, 2011, and the appeal was docketed to the January 2012 term in this Court. Oral argument was heard March 6, 2012.

"wish[ed] to dismiss them and be given a little time to hire other lawyers or utilize a public defender or proceed pro se." In a postscript, appellant notified the court that he would request "a little time and some subpoenas" if he proceeded pro se. The trial court noted that the note was dated as having been written at 10:00 a.m. that morning, one hour after jury selection had commenced. The trial court denied appellant's motion, stating that a defendant must make an unequivocal assertion of his right to self-representation prior to trial. Inasmuch as appellant's handwritten note sought to dismiss trial counsel and replace them with retained counsel, a public defender, or himself, appellant's communication was not an unequivocal assertion of his right to represent himself. See id. See also *Crutchfield v. State*, 269 Ga. App. 69 (2) (603 SE2d 462) (2004); *Hayes v. State*, 203 Ga. App. 143 (2) (416 SE2d 347) (1992); *Lynott v. State*, 198 Ga. App. 688 (2) (402 SE2d 747) (1991). Appellant was not wrongfully denied his constitutional right to represent himself.

3. Appellant contends the trial court erred when it allowed the State to play for the jury videotapes of the 1988 interviews conducted by the Jones County sheriff's investigator of the victim's young children, ages three and five, two days after the victim was killed. Grown men at the time of appellant's 2008 trial, the victim's two sons testified. Mrs. Lamb's younger son remembered nothing but Mr. Danenberg walking into and then exiting the house. The older son recalled that "Dale," who was Mr. Danenberg's estranged wife, and her infant son were living with the Lambs; that his mother was sitting in a chair while she bottle-fed the infant and talked on the phone; that his mother requested he look out the window and report what he saw; that he told her Dale was being chased around a vehicle; that Mr. Danenberg came into the house and pointed a pistol at his mother, said something, and fired the gun; and that he and his young brother found a place to hide under the couch cushions in the living room and then hid under the baby's crib in a bedroom, where they were found by Dale and removed from the scene. The older son's testimony was interspersed with his statement that he could not recall certain details. Defense counsel did not cross-examine either of the victim's sons. Citing *Manning v. State*, 273 Ga. 744 (545 SE2d 914) (2001), the trial court admitted the videotapes after a foundation was laid through the testimony of the Jones County sheriff's investigator who conducted the 1988 interviews. The trial court did not err. "A party may introduce a prior consistent statement of a forgetful witness where the witness testifies at trial and is subject to cross-examination." Id. at 745. See also *Williams v. State*, 291 Ga. App. 279

(2) (661 SE2d 658) (2008) (forgetful witness's earlier statement to police admitted through the testimony of the officer who took the statement).

4. Appellant contends the trial court abused its discretion when it allowed a pharmacologist to be called as an expert witness for the State despite the fact that the State purportedly had violated OCGA § 17-16-4, the reciprocal discovery statute, by failing to list the pharmacologist as an expert witness and failing to provide defense counsel with a summary of the expert's oral report. See OCGA § 17-16-4 (a) (4). The trial court recessed in order for defense counsel to interview the expert witness, after which defense counsel, the assistant district attorneys, and the trial court discussed the matter outside the presence of the jury. Appellant's trial counsel agreed to the trial court's suggestion that the State's witness be treated as a rebuttal witness testifying out of order.[2] Trial counsel's affirmative withdrawal of the objection previously made returns the situation to one in which no objection was made (see *Dyer v. State*, 233 Ga. App. 770, 771 (505 SE2d 71) (1998)) and the failure to object at trial constitutes a waiver of appellant's ability to raise the issue on appeal. See *Powers v. State*, 314 Ga. App. 733 (1) (a) (725 SE2d 848) (2012) (issue was waived when appellant withdrew his objection).

5. Appellant contends the trial court denied him his constitutional and statutory right to testify in his own defense (see *Mobley v. State*, 264 Ga. 854 (2) (452 SE2d 500) (1995)) when the trial court declined to reopen the evidence and allow appellant to testify. After the defense had rested and the trial court's expert witness had testified, counsel for both parties agreed that the evidence was closed. At that point, one of appellant's attorneys announced that appellant just had informed counsel that he wished to testify.[3]

"[T]he right to testify on one's own behalf in defense to a criminal charge is a fundamental constitutional right" (*Rock v. Arkansas*, 483 U. S. 44, 53, n. 10 (107 SC 2704, 97 LE2d 37) (1987)), but that right is not without limitation, as "restrictions of a defendant's right to testify may not be arbitrary or disproportionate to the purposes they are designed to serve." Id. at 55-56. "A requirement that a defendant exercise his right to testify prior to the close of evidence is not arbitrary or disproportionate to the purposes it is designed to serve."

---

[2] In agreeing to the trial court's suggestion, defense counsel observed that the defense would learn the content of the rebuttal testimony prior to the defense presenting the testimony of its expert, a point the trial court described as being to the defense's advantage.

[3] After the State had rested, appellant stated his interest in making a statement of apology and remorse to the victim's family that did not subject him to cross-examination. The trial court denied his request.

(Citations and punctuation omitted.) *Smith v. State*, 306 Ga. App. 693 (2) (703 SE2d 329) (2010). Whether to reopen the evidence falls within the sound discretion of the trial court and the exercise of that discretion will not be disturbed on appeal absent an abuse of discretion. *Hurt v. State*, 239 Ga. 665 (8) (238 SE2d 542) (1977). The failure to include in the record a proffer of the testimony for which a party seeks to have the evidence reopened precludes the reviewing court from ascertaining whether harm resulted from the decision not to reopen the evidence. See *Burnette v. State*, 291 Ga. App. 504 (3) (662 SE2d 272) (2008); *Tweedell v. State*, 218 Ga. App. 518 (2) (462 SE2d 181) (1995) (defendant wished to testify); *Oswell v. State*, 208 Ga. App. 883 (2) (432 SE2d 586) (1993) (defendant wished to testify). We see no abuse of discretion in the decision of the trial court not to reopen the evidence to permit appellant to testify.

6. Appellant contends the trial court abused its discretion when it denied the request for continuance made by defense counsel on the opening day of trial. Counsel's request was based on: the State's production, 35 days before trial commenced, of over 11,000 pages of appellant's medical records,[4] including a CD containing over 570 phone calls from appellant to counsel, family, and third parties that allegedly required evaluation since the recorded conversations might contain privileged material and additional evidence of appellant's incompetency; the continuous production of new documents into the week of trial; the State's filing of additional witness lists in both the competency trial and the criminal trial, adding fifteen witnesses;[5] and the failure of the State to provide the raw data of psychological testing done at Central State Hospital, which the hospital was ordered to produce in an August 2008 order issued by the trial court.

"All applications for continuances are addressed to the sound legal discretion of the court and, if not expressly provided for, shall be granted or refused as the ends of justice may require. . . ." OCGA § 17-8-22. Since a motion for continuance is addressed to the sound discretion of the trial court, the trial court's refusal to grant a continuance will not be disturbed on appeal absent a clear abuse of discretion. *Blackshear v. State*, 285 Ga. 619 (2) (680 SE2d 850) (2009).

---

[4] The State turned over the documents to appellant's attorneys on the same day the State received the documents from Central State Hospital.

[5] Two of the fifteen "new" witnesses testified at trial, and the two witnesses were retired scientists who, as employees of the Georgia State Crime Lab, had done tests (lifting fingerprints from a Colt .45 and testing handwipings for gunshot residue) on material submitted to them. No fingerprints with value for comparison purposes were found, and the handwipings tested positive for gunshot residue. The defense did not cross-examine either witness.

There appearing to be no abuse of discretion on the part of the trial court, appellant's enumeration of error is without merit.

7. Appellant contends the trial court erred when it permitted the State to present "similar transaction" testimony from two witnesses who were not listed on the notice of intent to present such evidence (see Uniform Superior Court Rule 31.3) and were not part of the pre-trial hearing on the issue of similar transaction evidence. We conclude that the trial court's failure to strike the testimony, summarized below, was not an abuse of discretion as the incidents to which the witnesses testified did not qualify as "similar transactions" since they were not sufficiently similar to or connected with the fatal shooting of the victim "so that the proof of the former tends to prove the latter." See *Reed v. State*, 291 Ga. 10, 12 (3) (727 SE2d 112) (2012).

(a) The first witness was an attorney who employed appellant in the mid-to-late 1980s. He testified that he had terminated appellant's services after appellant had told him he had carried a loaded gun into a local courthouse and a courthouse employee had reported to the witness that appellant had "badgered" a witness who was leaving the courtroom after appellant had lost the case. The witness also testified that appellant had told him he had been "thrown out" of a local weight-lifting gym and had suggested to another attorney in the office that he take steroids. After the defense declined to cross-examine the witness, counsel and the trial court engaged in a bench conference at which defense counsel described the witness's testimony as similar transaction evidence not raised in the pre-trial notice and sought an instruction to the jury that they disregard it.

(b) The second witness was a man employed as an assistant to appellant's mother in her real estate business from June 1988-2000, who testified that he saw appellant in the office several times a week and described him as having a temper. The witness stated that, shortly after the victim was killed in 1988, he was instructed by his employer to remove appellant's personal items from the office's basement apartment and discard the items in a trash receptacle in another residential complex in which appellant's mother had an interest. The witness testified that appellant's mother owned a red Suzuki Samurai that was equipped with a cellular telephone in 1988, that appellant's mother had described appellant as very bright and as having a temper and that, in talking with the witness about the murder charge against appellant, she had told the witness she did not

think her son was guilty because "they had pushed him too hard" by trying to keep his son from him and the victim "deserved it or got what she deserved."[6]

8. When, as in this case, a defendant files notice of an insanity defense, OCGA § 17-7-130.1 requires a trial court to appoint at least one psychiatrist or licensed psychologist to examine the defendant and to testify at trial after presentation of evidence by the State and the defense. Both the prosecution and the defense are entitled to cross-examine the court-appointed witness at trial and to introduce evidence in rebuttal of the testimony of the witness. Id. The court-appointed medical expert is "an independent and impartial witness" who "cannot be classified as an agent of the state...." *Tolbert v. State*, 260 Ga. 527 (2) (b) (397 SE2d 439) (1990). Dr. Katherine Jacoby, a psychiatrist employed by Central State Hospital, served as the court-appointed witness, and was introduced to the jury by the trial judge as the court's witness who was being called to testify by the judge and would be subjected to cross-examination by attorneys for the State and the defendant.

Appellant contends in conclusory fashion that the statutory procedure violates due process and the separation of executive and judicial powers because the appointed expert was an employee of the executive branch at Central State Hospital, was appointed at the suggestion of the assistant district attorney and testified, when cross-examined by the State, "as though she were another prosecution witness...." The record shows that a week after defense counsel filed notice of intent to raise the issue of insanity, the trial court held a hearing at which pre-trial motions, appellant's notice of insanity defense, and appellant's competency to stand trial were discussed. At the hearing, the assistant district attorney stated his assumptions that the trial court would appoint an expert from Central State Hospital and that the appointee would be Dr. Jacoby, who previously had evaluated appellant's mental competency to stand trial, and informed the trial court that Dr. Jacoby had set aside time for the evaluation. However, the order issued by the trial court did not appoint Dr. Jacoby; rather, the order directed the Department of Human Resources to conduct an evaluation of appellant and provide the court with a report of diagnosis, prognosis, and its finding with respect to appellant's degree of criminal responsibility or mental competency at the time the victim was killed. That the expert's

---

[6] The witness was permitted to testify to the contents of his employer's out-of-court statements after it was ascertained that the witness was under subpoena and was going to be called as a witness by either the State or the defense.

opinion — that appellant was not insane when he shot the victim — supported the position of the State did not make the expert a witness for the prosecution. See *Brannan v. State*, 275 Ga. 70 (11) (561 SE2d 414) (2002). We do not see the violations of due process and separation of powers to which appellant alludes.

*Judgment affirmed. Carley, C. J., Hunstein, P. J., Hines, Melton and Nahmias, JJ., and Judge Stephen S. Goss concur. Thompson, J., disqualified.*

DECIDED JUNE 25, 2012 —
RECONSIDERATION DENIED JULY 26, 2012.

*Bell & Brigham, John C. Bell, Jr., Robert W. Cullen*, for appellant.

*Fredric D. Bright, District Attorney, Gregory L. Bushway, Keagan W. Goodrich, Assistant District Attorneys, Samuel S. Olens, Attorney General, Paula K. Smith, Senior Assistant Attorney General*, for appellee.