**FIFTH DIVISION**
**MERCIER, C. J.,**
**MCFADDEN, P. J., and RICKMAN, J.**

**NOTICE: Motions for reconsideration must be** *physically received* **in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

**July 29, 2024**

# In the Court of Appeals of Georgia

A24A1123. LEAPHART v. THE STATE.

MERCIER, Chief Judge.

Following his conviction for aggravated child molestation and the denial of his motion for new trial, Patrick Leaphart appeals, contending that the trial court erred by: (1) failing to conduct a *Faretta* hearing following his invocation of the right to represent himself, see *Faretta v. California*, 422 U. S. 806 (95 SCt 2525, 45 LE2d 562) (1975), and (2) admitting certain testimony from the victim's trauma therapist in contravention of OCGA § 24-4-403. For the reasons set forth below, we affirm.

Viewed in the light most favorable to the verdict, the evidence produced at trial shows that, in 2018, Leaphart was living with the eight-year-old victim and her

mother, who was Leaphart's fiancée at the time.[1] The victim testified at trial that, at a certain point during this cohabitation, Leaphart started "[doing] sex to me" and "put his dick into my private part." The victim recounted that, on one occasion in her bedroom, Leaphart pushed her onto the bed and sexually assaulted her. The victim further testified that she told Leaphart to stop because he was hurting her, but he refused. The victim also described similar abuse that occurred at her grandmother's house and in Leaphart's truck. She also recalled an instance of abuse during which Leaphart "[stuck] his dick into my butt."

While at summer camp, the victim made an outcry to a friend, telling her that she had been molested by Leaphart on multiple occasions. Though the victim asked her friend not to tell anyone, her friend disclosed the information to camp counselors.

---

[1] See, e. g., *Leaptrot v. State*, 272 Ga. App. 587, 588 (1) (612 SE2d 887) (2005) (evidence must be viewed in the light most favorable to criminal conviction on appeal). See also *Bland v. State*, 363 Ga. App. 268, 269 (1) (870 SE2d 823) (2022) ("[T]he testimony of a single witness is generally sufficient to establish a fact[,] OCGA § 24-14-8," including the elements of child molestation, and physical or other corroborating evidence is not required.) (punctuation omitted). We note that Leaphart does not challenge the sufficiency of the evidence, and, as such, we do not review it. We nonetheless set forth the facts in order to facilitate the discussion of the issues that Leaphart does raise on appeal.

Following the sexual encounters with Leaphart, the victim underwent both a forensic interview and therapy for post-traumatic stress.[2] The forensic interviewer testified that the victim recounted the acts of abuse with specific details and concluded that the victim's disclosures and behaviors were "consistent with other children who have been traumatized and molested[.]" In addition, the trauma counselor testified that the victim had suffered trauma and that her "trauma symptoms were consistent with trauma symptoms that are commonly expressed."

1. Leaphart contends that he is entitled to a new trial because the trial court failed to properly conduct a *Faretta* hearing after he indicated that he wished to represent himself at trial. Because Leaphart did not *unequivocally* state his desire to represent himself, however, we disagree.

In relevant part, the record shows that, after his arrest, Leaphart was assigned a public defender, Chris van Rossem, to represent him. Leaphart thereafter hired his own lawyer, that lawyer withdrew, and the same public defender was reappointed. Shortly after that, Leaphart retained a second lawyer on his own, that lawyer also subsequently withdrew, and the same public defender was appointed a third time. At

---

[2] The jury viewed a video of the forensic interview and was supplied with a transcript of its contents.

that point, Leaphart began filing a number of pro se motions, including a "petition for bail," and a demand for a speedy trial. In addition, Leaphart filed a motion to dismiss the public defender as his counsel, stating his belief that the public defender's allegedly deficient representation "sends red flags & [does] not put me in a comfortable position to trust for trial." (Punctuation omitted.) Importantly, Leaphart's motion made *no assertion* that he wished to represent himself, only that he wished for the dismissal of the public defender currently assigned to his case.

The trial court considered Leaphart's pro se filings at a status conference held on January 7, 2020,[3] and, with regard to Leaphart's request to represent himself, the following colloquy occurred:

> THE COURT: Okay. So, Mr. Leaphart, it sounds like you've caused a lot of the delay by hiring different lawyers, so what's your plan now?
>
> LEAPHART: My plan is -- the lawyer was hired because I figured that -- it wasn't moving, Your Honor. I was sitting. Wasn't anything moving to get me to stick with [the public defender,] Mr. Chris van Rossem, so I said there's got to be something that can be done because I'm just sitting and there's not nothing happening. Here I am almost at 16 months and nothing have happened. The first trial was supposed to have been August the 19th. Yeah, August the 19th, but I have sat from September the 9th, 2018, up until then just nothing, Your Honor. Just absolutely nothing. I'm like -- I'm just sitting there.

---

[3] The trial court ultimately dismissed Leaphart's pro se filings.

THE COURT: So what's your plan?

LEAPHART: My plan is to get this dismissed.

THE COURT: Well, how are you supposed to do that without a lawyer? If Mr. van Rossem isn't your lawyer, who is going to be your lawyer?

LEAPHART: Well, at this point *if I can't -- as of now*, I would like to go with myself.

THE COURT: Well, your charges are such -- I mean, we can go through all the rigamarole that needs to be done legally, but I'm not going to let you go without a lawyer. You have an aggravated child molestation which carries a mandatory minimum of?

PROSECUTOR: I would argue in this case life because the State had filed a 404, Judge, and I'd have to review to see if he's actually a recidivist such that we would be asking you to sentence to life. The mandatory minimum even without that is 25 days [sic].

THE COURT: Very serious charges. I'm not letting you represent yourself, Mr. Leaphart. Somebody is going to be sitting there with you. So if you're not going to hire somebody, you're going to get the Public Defender's Office.

(Emphasis supplied.) In other words, the trial court stated its intention to, at the least, assign backup counsel to sit with Leaphart at trial.

Later in the hearing, Leaphart's counsel entered into the following discussion with the trial court:

5

MR. VAN ROSSEM: I do think either if we want to do it later this afternoon or at our January 28th PMR date – because he does have a right to represent himself that we –

THE COURT: Go through the –

MR. VAN ROSSEM: Go through –

THE COURT: -- factors? I'll be glad to do that next time.

There is no indication, however, that the trial court ever went "through the factors" of self-representation (presumably, a *Faretta* hearing) with Leaphart. Instead, without further objection to representation by the public defender, Leaphart proceeded to trial. While it would have been a better practice for the trial court to hold a *Faretta* hearing after indicating that it would, the failure to do so was not reversible error under the specific facts of this case.

It is settled that, under both the federal and Georgia constitutions, a criminal defendant has both the right to counsel *and* the right to self-representation. See *Faretta*, 422 U. S. at 819–820 (III) (A); Ga. Const. of 1983, Art. I, Sec. I, Pars. XII, XIV; *Taylor v. Ricketts*, 239 Ga. 501, 502 (238 SE2d 52) (1977) ("A state may not force a lawyer upon an appellant when he insists that he wants to conduct his own defense. [Cit.]"). In order to protect the right to self-representation, a defendant's unequivocal

6

assertion of that right made prior to trial must be followed by a hearing to ensure that the defendant knowingly and intelligently waives the "traditional benefits associated with the right to counsel" and understands the "disadvantages of self-representation so that the record will establish that he knows what he is doing and his choice is made with eyes open." *Faretta*, 422 U. S. at 835 (V) (citation and punctuation omitted); *Wiggins v. State*, 298 Ga. 366, 368 (2) (782 SE2d 31) (2016). The improper denial of the right to self-representation is a structural error and requires automatic reversal. See *McKaskle v. Wiggins*, 465 U. S. 168, 177 (III) n.8 (104 SCt 944, 79 LE2d 122) (1984); *Oliver v. State*, 305 Ga. 678, 680 (2) (827 SE2d 639) (2019) (same). If a defendant makes an *equivocal* request to represent himself or herself, however, a trial court does not commit reversible error by requiring the defendant to proceed with counsel without conducting a *Faretta* hearing. See, e.g., *Danenberg v. State*, 291 Ga. 439, 440-441 (2) (729 SE2d 315) (2012) (defendant's note to court asking to dismiss trial counsel and replace them with retained counsel, a public defender, or himself, was not an unequivocal assertion of right to self-representation). In summation, "[t]he pre-trial unequivocal declaration of a defendant that he wishes to represent himself must be followed by a hearing at which it is determined that the defendant knowingly

7

and intelligently waives the traditional benefits associated with the right to counsel."
Id. at 440 (2) (citation and punctuation omitted).

Here, Leaphart's statement that "if I can't -- as of now, I would like to go with myself" was an *equivocal* assertion of the right to self-representation. In *Burney v. State*, 309 Ga. 273, 279 (2) (845 SE2d 625) (2020), our Supreme Court found a similar request to be equivocal. There, the trial court encouraged the pro se defendant to retain counsel, but the defendant indicated that he knew what he was facing and that "as of right now" he wanted to "keep going" pro se. Id. at 280 (2). The defendant later met with attorneys from the office of the Georgia Capital Defender and agreed to be represented by them at trial. Id. Based on these facts, our Supreme Court concluded:

> [The defendant's] statement to the trial court that "as of right now" he was comfortable proceeding pro se was not an unequivocal invocation of his right to self-representation, as the statement suggested that [the defendant] might reconsider that decision as his case progressed. Although [the defendant] now argues that he would have proceeded pro se throughout his case had the trial court determined at some point that he had made an intelligent, knowing, and voluntary waiver of his right to counsel, the record reflects that [the defendant] accepted the representation of counsel eight months later and proceeded through the rest of the proceedings in the case with that same counsel. See *Oliver*, 305 Ga. at 680-681 (2) ("Acquiescence to the substantial participation by counsel . . . obliterates any claim that the participation in question

deprived [defendant] of control over his own defense." (citation and punctuation omitted)). For these reasons, this enumeration of error fails.

Id. at 280 (2).

In a similar manner, Leaphart's claim must fail in this case. Leaphart's written pro se motion to "dismiss" his lawyer contained no assertion of the right to self-representation, and Leaphart's oral request to represent himself "if I can't – as of now," suggests both that his decision hinged on some unspoken precondition ("if I can't") and that he might reconsider his decision at some future time ("as of now"). This request was equivocal. Id.

> Moreover, [following his *equivocal* request to represent himself, Leaphart] went to trial with counsel without any objection or even mention of it to the trial court and complained only after trial. Acquiescence to the "substantial participation by counsel" at trial "obliterates any claim that the participation in question deprived [Leaphart] of control over his own defense." *McKaskle*, 465 U. S. at 182–183.

*Oliver*, 305 Ga. at 680-681 (2).

Accordingly, Leaphart's contention that structural error occurred due to the trial court's failure to conduct a *Faretta* hearing must fail.[4]

---

[4] It must also be noted that Leaphart's request was made after he had shown a longstanding preference for representation, as Leaphart had twice retained counsel of his own.

2. Leaphart next contends that the trial court erred by allowing the victim's trauma counselor to opine that the victim's "trauma symptoms were consistent with trauma symptoms that are commonly expressed."[5] More specifically, Leaphart contends that this opinion was unduly prejudicial because it "indicated to lay jurors, at least, that the counselor found [the victim's] allegations [to be] believable." And, as the basis for this contention, Leaphart relies exclusively on OCGA § 24-4-403 ("Rule 403"). This contention is misplaced.

Rule 403 indicates that a trial court may exclude otherwise relevant evidence if its probative value is "substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." OCGA § 24-4-403. "The major function of Rule 403 is to exclude matter of scant or cumulative probative force, dragged in by the heels for the sake of its prejudicial effect." *Olds v. State*, 299 Ga. 65, 70 (2) n. 7 (786 SE2d 633) (2016) (citation and punctuation omitted). The exclusion of relevant evidence under Rule 403 "is an extraordinary remedy which

_____

[5] Prior to trial, Leaphart filed a motion in limine to exclude the trauma counselor's testimony, but the trial court denied that motion, rejecting the argument that Leaphart now raises on appeal.

should be used only sparingly, since it permits the trial court to exclude concededly probative evidence." *Harvey v. State*, 344 Ga. App. 761, 769-770 (2) (a) (ii) (811 SE2d 479) (2018) (citation and punctuation omitted). For this reason, "we look at the evidence in a light most favorable to its admission, maximizing its probative value and minimizing its undue prejudicial impact." *Anglin v. State*, 302 Ga. 333, 337 (3) (806 SE2d 573) (2017) (citation and punctuation omitted).

In this case, the testimony from the victim's trauma counselor that the victim's "trauma symptoms were consistent with trauma symptoms that are commonly expressed" was directly probative of the issue of whether the victim had suffered a traumatic event. And, contrary to Leaphart's assertion, it was not an assessment as to the victim's credibility regarding her sexual abuse. It was simply an assessment that the victim had undergone trauma. In fact, the trauma counselor testified repeatedly that it was the job of the *forensic interviewer* to gather and assess evidence of whether the victim had been molested, *not hers*. Therefore, the factual premise on which Leaphart bases his Rule 403 argument is belied by the record, and the potential prejudicial impact about which Leaphart complains was, at most, extremely minimal.[6]

---

[6] We note that the victim's forensic interviewer testified the victim's behaviors were "consistent with other children who have been traumatized and molested[.]"

11

Under these circumstances, the entire foundation for Leaphart's claim that the evidence was unduly prejudicial fails. And, accordingly, Leaphart has shown neither error nor harm to support his contention based on an alleged violation of Rule 403.

*Judgment affirmed. McFadden, P. J., and Rickman, J. concur.*

---

Leaphart makes no contentions regarding this statement on appeal, further undercutting any argument that he was harmed by the assessment of the trauma counselor.